## Case No. 7,761.

### KIELLEY v. BELCHER SILVER MIN. CO.

[3 Sawy. 500; 1 Law & Eq. Rep. 13; 1 N. Y. Wkly. Dig. 349.] [1]

Circuit Court, D. Nevada. Oct. 13, 1875.

NEGLIGENCE OF FELLOW SERVANT — SAME EMPLOYMENT, WHAT ?—KNOWLEDGE OF DANGERS—ADVISING VERDICT.

1. Where an injury results to a party from the negligence of a fellow-servant, in the same line of employment, there is no liability on the part of the employer, provided he has exercised due care in the selection of his servants.

[Cited in Buckley v. Gould & Curry Silver Min. Co., 14 Fed. 838.]

2. Where several persons are employed in a mine, some breaking down the ore with picks and by blasting, and others at the same time loading and wheeling out the ore so broken down, those so engaged in breaking down the ore, and in loading and wheeling it out, are fellow-servants in the same line of employment, within the rule.

3. Where a party employed in a dangerous occupation, wherein insufficient means are provided for avoiding the dangers, with full personal knowledge of all the dangers, and of the want of proper means for guarding against them, voluntarily continues in such employment, he assumes the risk, and he cannot recover against his employer for injuries resulting from such known dangers, and known want of proper means for avoiding them.

[Cited in Bunt v. Sierra Buttes Gold Min. Co., 24 Fed. 849.]

[Cited in McQueen v. Central Branch U. P. R. Co. (Kan.) 1 Pac. 141.]

4. Where, upon the evidence, the court is satisfied that there should be no recovery, and that a verdict, if found for the plaintiff, would necessarily be set aside for want of evidence to justify it, the jury will be advised to find for the defendant.

Action [by James T. Kielley] against the owner of a mine for injuries sustained in the mine through the negligence of a fellow-workman in setting off a blast without giving sufficient notice to the plaintiff. At the close of the plaintiff's testimony, the defendant's counsel moved the court to advise

the jury to find a verdict for defendant, upon the ground that the evidence taken as true, and most strongly in favor of the plaintiff, would not justify a verdict in his favor. [The case is now heard upon this motion. A demurrer to the complaint in this case had been previously overruled. Case No. 7,760.]

Lewis & Deal, for plaintiff.
Whitman & Wood, for defendant.

Before SAWYER, Circuit Judge, and HILLYER, District Judge.

SAWYER, Circuit Judge. We have considered as carefully as the time and circumstances will admit, the motion made by the defense at the close of plaintiff's testimony to advise the jury to find a verdict for defendant. There are two points necessary to decide on this application. It is first claimed that the accident resulted from the negligence of a co-servant, engaged in the same common employment; and, being the result of the negligence of this co-servant, that the defendant is not liable for his acts. Conceding, then, this accident to have resulted from the negligence of a co-servant in the same line of employment, what is the rule of law applicable to the case? There is no doubt that the general, and in fact the entire line of decisions, with scarcely an exception, is to the effect that in such case there is no liability. There is a case, it is true, in Scotland, where the doctrine is repudiated; that case is valuable simply so far as it affords an argument against the rule. The case itself was reversed by the house of lords, on appeal. There is a case in Kentucky, where the court limits the rule, and throws out some remarks of disapprobation, but the whole line of decisions and authorities upon the point, where the question has arisen and been directly decided is, that where the negligent party is a co-servant in a common employment within the meaning of the rule, there is no liability. The supreme court of the United States has not passed upon the question, it is true, so far as we are aware, but the highest courts of almost every state in the Union have passed upon it. It has been passed upon many times in England, and the authorities, as we have stated, generally deny the liability. If there be an exception, it is but an exception to the great array of judicial decisions. The only question remaining in this case is: Was Kielley a co-servant, engaged in a common employment with the parties that were letting off the blast, within the meaning of the rule? Upon that point we have no doubt whatever— no doubt that he is a co-servant within the meaning of the rule. If he is not, it would be very difficult to determine who would be a co-servant within the rule. He was engaged in the business of mining—of taking out ore from the mine. The other parties Webber and Glenn, were breaking down the ore, either with a pick or by blasting—at this

1 [Reported by L. S. B. Sawyer. Esq.. and here reprinted by permission. 1 Law & Eq. Rep. 13, contains only a partial report.]

particular time by blasting—and that same ore that they were taking out was loaded in barrows and wheeled away by the plaintiff and others. They were all engaged in that common employment of removing ore from the mine. Blasting it out or breaking it down with a pick is but one stage in the process of removal; putting it in condition to be loaded in the barrow to be wheeled out is another. Those engaged in breaking down, and those in loading and wheeling, were engaged in different parts of one common employment. They were engaged in a work tending to a common object, one common end, and in connection with each other, each having a relation to the object, and to the common end; one breaking down and loosening the ore, and the other removing it from the mine. If this accident was the result merely of the negligence of Webber and Glenn, they being co-servants engaged in a common employment, then, under the rule as stated, and as established by the authorities, the defendant is not liable; and we do not think the supreme court, when it comes to consider this question, can come to any other conclusion, unless they overrule the general current of authorities; we might say, the unbroken current of authorities on that precise point. It is claimed, however, by the plaintiff, that there is something broader than this. It is claimed that the accident is not merely the result of the negligence of Webber and Glenn in letting off the blast without giving proper notice, but that it is the result of the negligence of the company, in failing to establish general rules or regulations providing some further means than were customary in that mine of giving notice of a blast. It may be a question here—and we are inclined to think it is, but we do not propose to put the decision upon that ground—it may be in question, whether the whole is not involved in the negligence of Webber and Glenn. If it was their duty to give notice, it was their duty to give sufficient notice, independent of any general or particular regulations, and a neglect to do so would be their neglect.

But still, we shall assume—and there is some plausibility in the point—that there is something in it broader than the negligence of Webber and Glenn; that it was the duty of the company to make other regulations, additional and further regulations, for affording means of notice other than those that were ordinarily adopted in this mine. Then we come to this position: The plaintiff, upon his own testimony—for we must take his own testimony as he gives it—and taking it in the light most favorable to himself, upon his own showing, knew the mode in which this ore was loosened; that it was by blasting. He had at times been engaged in blasting himself; he was wheeling ore out after the blasts. In this particular case he knew that the ore, if there was any there, on the twelfth floor, was the result of a blast. He said he supposed that the blast had already gone off, from the fact of there being ore there; but he knew that the mode of preparing the ore for its reception in the wheelbarrow was by blasting. He knew, because he tells us so, what the customary mode of notifying parties of an impending blast was and that was by calling out "fire." This he understood to be the customary mode. He knew, according to his own statement, that no other precautions were taken; he knew that no lights were placed at the point of the contemplated blast, and he knew that no bells were placed in the cooling-room, because that was a matter of conversation between him and his co-laborers. He knew the number of men that were provided to notify those approaching, as it was also a matter of conversation between them; that the means of notification were insufficient, and it was suggested, among other things, that bells might be arranged in the cooling-room, to give notice of the coming blast. Now, having knowledge of all those matters, he still does not seem to have complained to the defendant, but having that knowledge, and knowing the only means that were ordinarily taken to give notice of a blast, and knowing that those were insufficient to obviate all danger, he still continued in that employment. He had no reason to expect that any other notice would be given. He knew that no other was usually given, and that it was insufficient, and, under the authorities, we think that he went on with the business and assumed the risks which he knew attended it. It is not a matter of ignorance with him. In fact, he knew the means afforded for giving notice of danger, and beyond these he assumed himself the responsibility of guarding himself against the dangers resulting from the blasting. We think it is entirely and clearly within the case of McGlynn v. Brodie, 31 Cal. 376, and the cases there cited. This is not a matter of general reputation for neglect on the part of defendant, as claimed by counsel for the plaintiff—general reputation for carelessness: it was a knowledge of the actual mode of doing this particular business in this particular mine. He knew where they were blasting, according to his own testimony. He knew the mode of their taking the ore out; he knew in what the danger consisted; he knew that there was a blast liable to be set off at any time. He had been engaged in this work for a long time, engaged in that employment some months; and it was with reference to this subject of blasting that the discussion took place in regard to placing signal-bells in the cooling-room, to which they resorted in their daily work, and having reference to the blasting that was done as a means of loosening the ore which he himself was wheeling out. It was, therefore, a special knowledge in regard to this particular matter, and not a general reputation, not a general report, but knowledge of the

precise circumstances under which he was working, and of the danger to which he was subject. It was with that knowledge, and with the full knowledge of the only means that were taken to advise him of impending danger, and that he had no reason to expect any other warning, he went on with the work, and, we think, under the law, he assumed the risk, assumed to take such precautions himself to ascertain when a blast was going off as were necessary, beyond those which were customary in that mine, and which he knew to be customary. We think, therefore, it is within the case referred to, and the authorities do not seem to be conflicting upon that point; they seem to be all one way. So far as they have been called to our attention, none seem to conflict with the case of McGlynn v. Brodie, and the cases there cited.

Then, taking the facts as stated by plaintiff himself, taking them in the strongest light in his own favor, we do not think he has made out a case that would justify us in giving it to the jury. We think, upon these points, that if the jury should find against the defendant in this case, the court would be compelled to set aside the verdict for want of evidence to support it. The motion, therefore, must be granted.

This is a hard case—undoubtedly, a very hard case; but still, the rules of law are rigid, and we are bound by them. We very much dislike to take any case from the jury, where there is anything that is proper to submit; but it would be, in our judgment, only consuming further time to no purpose if we were to go on with this case. We think, under the rules of law as established, and which we cannot abrogate, which we are not authorized to overthrow, that this case must be taken from the jury and the motion granted.

The jury, by direction of the court, found a verdict in favor of the defendant.