# The Michigan Central Railroad Company v. Frank Dolan.

*Railroads: Employes: Conductor: Incompetence.* In an action against a railroad company by an engineer for an injury caused by the negligence of a freight conductor, evidence that he was put on the list of conductors some eight months before the accident, after having been employed as brakeman for a somewhat longer period, and that he had once by mistake carried a passenger by his stopping place, and had for that reason spoken disparagingly of himself to his employer, where it appears that he had nevertheless maintained a good standing, and that no fault had been found with him except by himself for this single blunder, does not make out a case of incompetence.

*Railroads: Conductors: Callers: Notice: Incompetence.* Notice to the caller, whose business it is merely to call the conductors in a certain order when trains are ready, and if one cannot go, to call the next, of a special temporary incompetency of a conductor called by him, is not notice to the company.

*Master and servant: Negligence: Fellow servants.* The liability of employers for the negligence of their servants does not extend to cases of injuries to fellow servants; but in such cases the master is not liable unless for his own neglect: and a corporation stands on the same footing in this regard with an individual.

*Master and servant: Railroads: Agents: Competency: Notice.* Employers are bound only to use such ordinary and reasonable care and precautions for the safety of their servants as the nature and dangers of the business admit of and demand. And in conducting a railroad, personal presence of directors and officers all along the line being impossible, subordinates

with more or less discretionary authority are indispensable; and the principal has a right to trust that an agent or officer carefully chosen will use good judgment in making his own appointments and doing his own duties, and is not bound to treat an employe as incompetent unless for some error or misconduct going to his general fitness for his place.

*Master and servant: Negligence: Agency.* The negligence of a fellow servant is one of the risks incident to the business which the employe must assume; and it is only a personal negligence of the employer, or, in case of a company, of those who in law represent its personality, that renders the employer liable.

*Heard October 14.    Decided October 26.*

Error to Jackson Circuit.

*Higby & Gibson* and *G. V. N. Lothrop,* for plaintiff in error.

*Austin Blair,* for defendant in error.

CAMPBELL, J:

Dolan, who was engineer of a passenger train on the Michigan Central Railroad, was seriously injured by reason of a collision with a freight train. It became necessary, to save his life, that he should jump from his engine while going very fast, and he was crippled by the fall. The conductor of the freight train, William Crofoot, had been running under telegraphic orders from Michigan City to Buchanan, where the accident happened. At that point he received a dispatch which made it his duty to wait for the other train. Either failing to read or to understand it, and omitting to give it to his own engineer before starting, which was his duty under the rules of the company, he started his train, and did not give the telegram to the engineer until too late to avoid the collision.

Dolan sued the company for damages, alleging as a reason for taking the case out of the rule which exempts employers from liability to servants for negligence of their fellow servants, that Crofoot was not a competent conductor, and was that morning under a special temporary incompetency, from drowsiness and weakness caused by fatigue, and that this was known to the company before he took his train from Michigan City.

The facts alleged to show general incompetency known to the company were, that he was put on the list of conductors about eight months before the accident, after having been employed as brakeman for a somewhat longer period; and that on one occasion, having made a mistake as to the rights of a passenger on a freight train, and carried him beyond the place for which he had a ticket, he complained of his own want of knowledge, and told Mr. Hopper, the agent in charge at Michigan City, who had appointed him, that he did not feel as if he was capable of running a train. He however continued as before, and there was no farther complaint or trouble.

The special incompetency alleged in the proof was, that when he was awakened by the person whose duty it was to awaken and call the conductors who were to run trains, he told the caller he did not feel able to go, and the latter told him he would have to go, because there was no one else to go.    He was called about midnight, and the train left about two hours thereafter.

There is some question whether the declaration avers any thing which would authorize proof of general incompetence; but, as we think there is no proof either that Crofoot was incompetent or that there was any reason to suppose it, that question becomes immaterial.

The uncontradicted proof shows that Mr. Hopper, the train manager at Michigan City, had a very long experience in railroad service, and that he appointed Crofoot to act as a freight conductor in accordance with the uniform practice of the company, in advancing persons after a preliminary experience as brakeman.    It also shows that Crofoot had maintained a good standing, and that no fault had been found with him, except by himself for his own single blunder in regard to a passenger.    This had no tendency whatever to show unfitness.    It rather tended to show a conscientious desire to correct his mistakes, and obtain more complete knowledge of his duties.

The only notice to any of the company's agents, concerning Crofoot's condition that morning, was the remark he

made to the person who called him. That person's business was to call the conductors in a certain order, when trains were ready, and if one could not go, to call the next. On this occasion Crofoot did not decline going, and the caller informed him there was no one else to go.

Assuming that the information given to the caller was such as to show the most absolute unfitness, we think there was nothing in his position which made such notice bind the company; and that the case comes within the principle of *Davis v. Detroit & Milwaukee Railroad Company, 20 Mich. R., 105,* and even comes far short of its facts.

The rule which holds employers liable for the negligence of their servants is not extended to cases where the injury is committed by a fellow servant. In all such cases the master is not liable unless for his own neglect. He is not liable where he has used all ordinary and reasonable precaution to provide for the safety of his servants, and where the mischief occurs in spite of these precautions.

A corporation stands on the same footing with an individual in this respect, and both are bound to use such care as the nature and dangers of their business require, and no more. In such a business as that of conducting a railroad, personal presence of directors and officers all along the line would be impossible. The charge of looking after various divisions of business and of local management must of necessity be given to many subordinates of greater or less authority, and each of these must be entrusted with considerable discretion, not only in managing business, but also in choosing their inferiors in position. It is incumbent on the principal, whether individual or company, to have safe rules of business, and to use care in selecting such agents as are immediately appointed. It is also a duty to remove such persons or to change such regulations as they have reason to believe unfit. But until informed to the contrary, they have a right to trust that an agent or officer carefully chosen will use good judgment in making his own appointments and doing his own duties; and they have a right to rest upon that

belief until, in the exercise of that general vigilance which devolves on themselves, they find they have been mistaken. And as all men are liable to errors, no one can be bound to treat an agent as incompetent, unless for some error or misconduct going to his general fitness for his place.

We are not disposed to discuss the question, on which some courts have differed, how far down in the chain of delegated appointments the master is to be held as bound to personal supervision.

The starting point, that he is only liable for his own neglect, is one from which we have no right to depart. And it is plain enough that when he is held to any personal supervision which from the nature of his business is impracticable, the rule is violated, and there is no tangible distinction left between liability to servants and liability to strangers. We think some of the decisions have led very far towards destroying all means of discernment.

But the present case is distinctly covered by our own decision in *Davis v. Detroit & Milwaukee R. R. Co.*, and by some of the principles as to corporate duty laid down in *Michigan Central R. R. v. Coleman, 28 Mich. R., 440,* and any extended reasoning would be superfluous.

The company had selected in the person of Mr. Hopper a competent and experienced train manager, and Mr. Hopper had selected Crofoot as a conductor in the usual course, and had no reason from his conduct and repute to doubt his fitness. He had no notice on this occasion that Crofoot was sick or unfit to act, and Crofoot did not decline or omit to take charge of the train. It would be going beyond all reason to hold that notice to a person acting in a very humble and inferior capacity, whose discretion, if he had any range at all, was confined to calling the next in order on his list of conductors, when one was absent or unable to go, should be held notice to his immediate or remote superiors, even if they were near at hand. The negligence of Crofoot, and of the caller, and of others in their respective places, is a risk belonging to the business, and not a personal neg-

ligence of the company, or those who in law represent its personality. And if we accept Mr. Hopper as holding that representative capacity,—upon which we need express no opinion,—his subordinates cannot be held to possess it, without throwing the door open to holding every servant of the company as representing it.

We think there was nothing to go to the jury. The great hardship to Dolan, and the outrageous negligence of Crofoot, while appealing to sympathy for the party suffering, have no bearing on the question of actual fault in the company. The jury should have been directed to find for the defendants below.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.