### GEORGE WOOD *vs.* NEW BEDFORD COAL COMPANY.

Bristol.   Oct. 25. — Nov. 1, 1876.   DEVENS & LORD, JJ., absent.

A laborer, employed in hoisting coal by machinery, cannot maintain an action against his employer for personal injuries resulting from the neglect of the engineer, his fellow servant, to stop the engine, as it was his duty to do, when the tub, in which the coal was hoisted, reached a particular height.

TORT.   The declaration was as follows :

"And the plaintiff says he was employed by the defendants at New Bedford, in their place of business in and about their machinery and appliances used in receiving and delivering coal. That said machinery and appliances were operated and run by a steam-engine, for the management and operation of which, it was the duty of the defendants to employ a careful, competent and skilful engineer.   That instead thereof they employed and continued to employ one William Perry as such engineer, who was careless, unskilful and incompetent for that purpose, which the defendants well knew, and which by using due care they might have known.

" And the plaintiff further says that he was imprudently, negligently and carelessly set to work by the defendants in and about their machinery and appliances aforesaid, without any caution or instruction, in an unsuitable and unsafe place to use and operate and attend unnecessarily dangerous and unsafe machinery and appliances of the defendants ; whereby the plaintiff was exposed to great and unnecessary risks, and risks not required by his employment or the business carried on by the defendants, and whereby, and also by reason of the carelessness, unskilfulness and incompetency of the engineer, the said William Perry, who then managed and operated the steam-engine as aforesaid, the plaintiff while employed at his duty as aforesaid, and using due care, was struck and injured by said machinery and appliances of the defendants, and was subjected to great pain, suffering and expense for a long time."

At the trial in the Superior Court, before *Pitman*, J., the evidence was in substance as follows : The defendant corporation had a large building upon a wharf in New Bedford, with steam-engines and appliances for unloading coal from vessels at the wharf, and depositing it in railway cars and in heaps about the building. The method of doing this was by having a rope or fall attached at one end to a drum or cylinder in the engine room under the eye and care of the engineer, who had charge of the steam-engine which furnished the power. This rope passed up to the top of the building some eighty feet, through wheels or rollers attached to the framework there, and then dropped down outside, and by means of a hook was attached to a tub weighing about three hundred pounds, and was of sufficient length to drop into the hold of the vessel at the wharf, from which, when filled with coal weighing about seven hundred pounds, it was raised up by the steam power which caused the rope so attached to the drum or cylinder in the engine room to be wound around it. A piece of canvas or other mark on the rope indicated to the engineer the point at which he should cease to let it wind around the cylinder, it being the point at which the tub would be raised at a sufficient height for being dumped or emptied down the shoot into the cars. To guide the tub when going down or up from the hold of the vessel, a man was stationed at the hatchway with a guy rope. For guiding or swinging the tub over to the

shoot or dumping place on the wharf, after it had attained suffi-
cient height from the vessel, a platform about ten feet square
and about fifteen feet high was erected on the wharf. There
was placed another drum or cylinder on this platform with a
crank at the end for a man standing on the platform to take hold
of when in use. To this drum was attached a rope which ex-
tended therefrom and was attached to the outer rim of a circular
piece of iron, called a "dead eye," with a hole in the centre,
through which hole the rope to which the tub was attached had
been passed. This "dead eye" was kept in its proper position
by three or four other ropes extending from beams above and
fastened to its outer rim. When the tub in ascending had cleared
the vessel, it was the duty of the man stationed at this crank to
seize the crank, and by turning the drum therewith, wind the
rope on it, and cause the tub to swing over to the shoot or dump-
ing place on the wharf, the tub rising to the height of the "dead
eye," through which the hook could not pass. In this position
it was the duty of the man at the crank to hold it until it was
emptied, when he relinquished his hold on the crank, the rope
unwound, and the tub of its own weight would swing back and
descend to the vessel's hold, where the hook was fastened to an-
other tub which in the mean time had been filled and the same
course was followed as before.

The plaintiff was employed by the defendant corporation about
its premises from some time in the spring of 1874, until July 16,
when he was injured. He had frequently attended the crank in
the course of his employment; and when he had wound the rope
on the cylinder, and brought the tub to its proper position to be
dumped, he held it in position with both hands brought up to,
and resting on, his breast near his right shoulder. It required a
great deal of strength to hold it in that position, and he could
readily do it, but if he let go before it was dumped, he could not
get out of the way, before the swift revolution of the crank im-
pelled by the weight of the coal would hit him and injure him.
On July 16, 1874, the plaintiff was thus employed at the crank,
and, using due care, had got the tub in position to be held, in the
manner above described, to be dumped; but the engineer instead
of stopping his steam-engine at that point, as indicated by the
canvas mark on the rope, as before mentioned, which it was his

duty to do, suffered the engine to go on, thus winding the rope on the drum beyond the mark indicated, there being nothing to prevent it from continuing to wind and causing the tub to rise higher, and, unwinding the rope on the drum where the plaintiff was holding the crank, brought the whole force of the steam power on him and crushing him down, and breaking his hold, which it was impossible for a man to maintain, he was struck by the revolving crank on his shoulder and back, breaking his bones and otherwise injuring him.

The plaintiff was twenty-seven years of age, and had no knowledge of the workings of steam-engines and machinery, other than as a common laborer; he did not know and had never been told that the tub could be raised higher by the engine than the point indicated, or that such raising would have any such effect upon the crank as described. The engine and engineer, though on a level with him, were in an inclosed part of the building out of his sight. If, from negligence of the engineer, or from any cause, the engine continued to move and its cylinder to revolve, when the plaintiff held the crank in that position, there was nothing to indicate to him that it would so continue to move, and it was impossible for him to escape being hit by the crank if so continued, and he did not know the duty of the engineer in that respect. None of these facts were known to the plaintiff until after the injury. There was evidence from which the jury might find that they were known and understood by the engineers in the defendant's employ. No appliances for the safety of the man at the crank were used. The plaintiff testified upon cross-examination : " The platform was roomy enough. The only thing I did n't know was what would be the effect of the engineer's hoisting too high. I don't know of any danger there except the engineer's hoisting too high."

The defendant offered no evidence, and contended that upon these facts as matter of law there was no evidence of fault or negligence on its part for which it could be held liable under the declaration. The judge was of opinion that upon the declaration the plaintiff could not recover on the ground of use by the defendant of defective, improper or insufficient machinery, and offered the plaintiff an opportunity to amend, which he declined to do ; and thereupon ruled that the plaintiff, as the case stood,

had no cause of action, and directed a verdict for the defendant, and reported the case for the consideration of this court.

If upon the foregoing evidence it would be competent for the jury to render a verdict for the plaintiff, upon this declaration, a new trial was to be had; otherwise judgment for the defendant.

*J. Brown*, for the plaintiff, cited *Cayzer* v. *Taylor*, 10 Gray, 274; *Gilman* v. *Eastern Railroad*, 13 Allen, 433; *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572; *Ford* v. *Fitchburg Railroad*, 110 Mass. 240; *Northcoate* v. *Bachelder*, 111 Mass. 322; *Sullivan* v. *India Manufacturing Co.* 113 Mass. 396; *Avilla* v. *Nash*, 117 Mass. 318.

*C. W. Clifford*, (*G. Marston* with him,) for the defendant.

MORTON, J. This case falls within the well settled rule of law that one who enters the service of another takes upon himself the ordinary risks of the employment in which he engages, including the negligent acts of his fellow servants in the course of the employment. *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572.

The declaration alleges, as one ground of the defendant's liability, that it knowingly employed an unskilful and incompetent person as engineer. The plaintiff does not contend that there was any evidence to support this allegation.

The declaration further alleges that the plaintiff was "negligently set to work by the defendants in and about their machinery and appliances, without any caution or instruction, in an unsuitable and unsafe place, to use and operate and attend unnecessarily dangerous and unsafe machinery and appliances of the defendants."

The ruling that, under this allegation, the plaintiff could not recover on the ground of the use by the defendant of defective, improper or insufficient machinery, need not be considered, because it is immaterial. The difficulty of the plaintiff's case is that the evidence clearly shows that the injury to him was caused by the negligent act of a fellow servant. There was no evidence that the platform, on which the plaintiff worked, and the engine and other machinery were not suitable and safe, if the workmen who used them did their duty, or that the accident was caused by any want of instruction or caution to the plaintiff. On the contrary, it appeared that the sole cause of the accident was that

the engineer neglected to stop the engine, as it was his duty to do. In this respect the case differs from the cases cited by the plaintiff.

As the plaintiff was injured by the negligence of a fellow servant he cannot recover, and the Superior Court rightly directed a verdict for the defendant. *Durgin* v. *Munson*, 9 Allen, 396.

*Judgment on the verdict.*