## BUCKLEY *v.* GOULD & CURRY SILVER MINING CO.

*'Circuit Court, D. Nevada.* November 9, 1882.)

1. NEGLIGENCE OF FELLOW-SERVANT.

　　The employer is not liable to a servant for an injury resulting from the negligence of a fellow-servant in the same line or department of employment, provided the employer exercises due care in the selection of competent servants.

2. WHO ARE FELLOW-SERVANTS.

　　The runner of a steam-engine employed in lowering men and material, and hoisting rock in sinking a shaft, is a fellow-servant in the same line or department of service, within the rule, with the men in the shaft engaged in excavating the shaft and loading the rock to be hoisted.

3. NO WARRANTY—ONLY DUE CARE REQUIRED.

　　The employer does not warrant the competency of his servants. He is only bound to exercise due care in the selection of careful and competent men for the service to be performed.

4. EVIDENCE OF INCOMPETENCY.

　　The mere fact that an accident occurred, though evidence of negligence on that particular occasion, is not, by itself, sufficient evidence to authorize a jury to find that the party so negligent is not a careful and competent man for the service in which he was engaged.

5. INSTRUCTION TO JURY IN ABSENCE OF EVIDENCE.

  Upon the close of plaintiff's testimony, if the evidence is insufficient to jus-
tify a verdict for plaintiff, the court will instruct the jury to find for the de-
fendant.

This case was tried by a jury. At the close of plaintiff's testimony
the defendant's counsel asked the court to instruct the jury to find a
verdict for the defendant, on the ground that there was not sufficient
testimony to go to the jury or to justify a verdict in favor of the
plaintiff.

*W. E. F. Deal,* for plaintiff.

*B. C. Whitman* and *M. N. Stone,* for defendant.

SAWYER, C. J., (*orally.*) We have carefully considered the motion
to instruct the jury to find a verdict for defendant in this case. The
main question is whether the engineer—runner, as he is termed, of
this engine—is a fellow-servant with the plaintiff in this case within
the meaning of the rule, which asserts the principle that the master
is not liable for an injury resulting to one servant from the negli-
gence of a fellow-servant in the same line of employment. We are
fully satisfied that he is a fellow-servant within the principle and
meaning of the rule. We have no doubt on that point. We do
not think *Hough* v. *Railway Co.* 100 U. S. 213, cited by the plaintiff,
militates against that proposition. On the contrary, we think it is
an authority directly in favor of defendant in this case. The court
in that case recognizes the rule; it does not question it; it only notices
the distinction which takes that case out of the rule. Mr. Justice
HARLAN, in delivering the opinion, says that the English author-
ities go much further in favor of the doctrine of the immunity of
the master from the responsibility for injuries received by a ser-
vant in consequence of the negligence of his fellow-servant in the
same line of employment, than the American courts. But the de-
cision in *Hough* v. *Railway Co.* is put upon another ground, namely:
that the act complained of in that case was the act of the com-
pany itself. A corporation must always act through its agents.
The rule is recognized that the company is bound to use all reason-
able care and diligence in furnishing suitable and safe machinery for
its servants to work with. In that case there was a violation of that
rule. The defendant did not furnish a good and sufficient cow-
catcher and steam-whistle. The accident occurred in consequence of
the improper condition of the locomotive engine. The engine ran off
the track by reason of a defective cow-catcher, and the steam-whistle
was blown or knocked off in consequence of not being properly fast-

ened, and the engineer was scalded to death by the escaping hot steam. It was the duty of the company to use all reasonable diligence to furnish a safe engine. To furnish a safe engine is one thing, but its management by the engineer is quite another. The engineer was simply an employe, working with the machinery. That machinery had to be furnished by those charged with that duty. Those men in charge, furnishing and supervising the engine, were the agents of the corporation for that purpose. This service could only be performed by a corporation through agents. Therefore their acts were the acts of the corporation, and not merely of fellow-servants. They were the acts of the corporation, through its agents, in furnishing machinery to work with. The decision is put upon that ground alone, and the court recognizes it as not being within the rule. It would have been the same in this case if the engine that was used in this mine had been a rickety, defective old engine, out of order, and the accident' had resulted from the use of that engine in consequence of its defects. Then this case would have been precisely like the one cited.

But the foundation of this action is that the accident was the result of the carelessness of the man who was running the engine. He was not an agent of the company. He had no authority over the plaintiff. He was merely a workman running an engine under the direction of a chief engineer, a general foreman, and a superintendent of the mine. It was not his business to furnish the engine. He had no authority whatever. He was co-operating with plaintiff in sinking the shaft. He was simply a fellow-servant co-operating in sinking the shaft. We do not think it makes any difference whether he was running an engine, or working with a wheel and axle, a pulley and bucket, or carrying the material up and down a ladder upon his shoulders. He was doing the same work, but doing it by different means. Every man below performed his part of the work in sinking the shaft—the work in which they were all engaged. They were working together in the same department in excavating this shaft. The fact that the engine-runner, as he is called, was using a different instrument in carrying the material up and supplies down makes no difference. It was work done in a common employment to accomplish a common end—the sinking of a shaft. One servant performed one part, and another another part.

In the old Spanish mines, in early days, and even yet in some parts of Mexico and South America, the ore is carried in sacks upon the backs of men by climbing up and down ladders, instead of using

an·engine. In sinking this shaft, if instead of the steam-engine used in carrying down the fuse and powder for a blast—the work actually engaged in at the time of the accident—or in raising the rock, the party running the engine had gone up and down a ladder, carrying the material used in mining down, and the rock up, we apprehend that no one would have asserted that he was not a co-servant in sinking the shaft—that he was not performing a common service in the same line or department of employment with those below. The fact of using another appliance does not change the character of the act; it was the same work. The authorities go to that extent. Take the case of *Wood* v. *New Bedford Coal Co.* 121 Mass. 252. The plaintiff was a laborer employed in hoisting coal by machinery, operated by a steam-engine. When it was hoisted to a certain height the man running the engine was to stop it. There was a man near the point where the coal was discharged to manage and empty the coal by means of a crank. The engineer hoisted the bucket too high, so that it went past the point where he should have stopped, and thereby the man at the crank was struck by it and severely injured. In that case the engine-runner and the man at the crank aiding to discharge the coal were held to be fellow-servants in the same department of employment, and the company not liable. That is in all respects like this, at least so far as the principle is concerned.

Again, in *Kelly* v. *Norcross*, 121 Mass. 508, the carpenters were charged with building a staging. The employers furnished suitable materials and committed the duty of building the staging to the carpenters, who had charge of the work themselves. The carpenters were superintending the construction of the staging, and the accident resulted from their negligence. An accident happened by which the staging fell and injured some of the laborers. They were held to be fellow-laborers within the rule. ··

In another case—*Holden* v. *Fitchburg R. R.* 129 Mass. 268—the head-note reads:

    " The rule of law that a servant cannot maintain an action against his master for an injury caused by the fault or negligence of a fellow-servant is not confined to the case of two servants working in company, or having opportunity to control or influence the conduct of each other, but extends to every case in which the two, deriving their authority and their compensation from the same source, are engaged in the same business, though in different departments of duty; and it makes no difference that the servant whose negligence causes the injury is a sub-manager or foreman of higher or greater authority than the plaintiff.

"A railroad corporation is not liable to a brakeman on one of its trains for injuries suffered from the negligent setting up and use of a derrick by workmen employed in widening its railroad."

In this case parties were employed in widening the road, and, for the purpose of performing that work, a derrick was erected. That is no part of the business of running a railroad. It is widening a road —enlarging its facilities. A train coming along, this derrick fell, and a brakeman passing this wreck was injured by a rope attached to the fallen derrick. He was engaged in running the train. The other men were engaged in widening the road for the company. They were held to be fellow-servants within the meaning of the rule. If they were so, these parties here must be fellow-workmen.

In *Cooper* v. *Mil. & Pra. du C.R. Co.* 23 Wis. 669, a flagman, who failed to properly notify the train of a break in the road, was held to be a fellow-servant with a brakeman on the train, killed in consequence of the negligence.

So, also, in a Wisconsin case, where a train went out to clear the track of snow. They had a party of snow-shovelers, designed to shovel snow off the road. The conductor concluded to clear the road at a certain point with a snow-plow. He made a rush into the snow with his snow-plow, and the result was that the train was thrown from the track. One of the snow-shoveling party, going to his work, was injured. The snow-shoveler injured was held to be a co-laborer in the same employment with the conductor, and the employer not liable on that ground. *Howland* v. *Mil., L. S. & W. R. Co.* 13 Reporter, 607; also see cases cited.

In Michigan, an engineer and conductor of freight trains are held to be fellow-servants. *Mich. C. R. Co.* v. *Dolan,* 32 Mich. 510.

In *Collier* v. *Steinhart,* 51 Cal. 117, it was held that the engineer running the engine to hoist water from a mine, by whose carelessness a tub of water fell upon a laborer at the bottom of the mine and injured him, was a fellow-servant with the party injured, within the rule.

So in *McLean* v. *Blue Point Gravel Min. Co.* Id. 257, McLean being in the hydraulic department, was injured by the carelessness of Regan, foreman in the blasting department of the "general business." McLean and Regan were held to be fellow-servants within the rule.

These are only a few of the many cases found in the books which illustrate this point. We do not find anything against it. The case

of *Kielley* v. *Belcher Silver Min. Co.* 3 Sawy. 500, on the trial, is a
similar case. We do not think the decision on the demurrer in that
case militates against the principle. Id. 437. The judge who de-
livered the opinion on the demurrer concurred in the opinion at the
trial; they were not considered to be in conflict. We think the
plaintiff and this runner of the engine were in the same line of em-
ployment, and substantially in the same department of service.
There can be no recovery for any injury resulting from the negligence
of his co-servant on that ground. There is nothing, then, to go to
the jury on that point.

The next point is on the allegation in the complaint that the com-
pany employed an unskillful engineer. That allegation falls short
of being sufficient. The company is not bound, under all circum-
stances, and at all events, to employ a skillful and competent engi-
neer; it is only bound to exercise due diligence and care in that
respect. It does not warrant that he shall be skillful, but it is bound
to use due diligence in providing or employing a skillful and compe-
tent engineer. It may have fully performed that duty; if it did, it
is not liable. There is no allegation that it did not exercise due dili-
gence, or was negligent in this respect; but the fact only is alleged
that the engineer was unskillful. Conceding it to be otherwise, there
is no testimony here to show that this engine-runner was not a com-
petent party; the only testimony is the fact that in this instance
an accident happened. An accident may happen to the most com-
petent and skillful man. He may have for years been without fault,
and the fact that in this instance he was negligent is not inconsistent
with the idea that he was generally a careful man, and entirely com-
petent to perform the duties which he performed. And the mere
fact of the single accident, although evidence of negligence in that
particular instance, is not sufficient evidence, as held by many au-
thorities, of incompetency, or that he is not a careful man. Quite a
number of cases to that effect were cited on the argument, and none
have been cited to the contrary.

In *Wood* v. *Bedford Coal Co.* 121 Mass. 252, it was alleged that
defendant knowingly employed an incompetent engineer. The acci-
dent happened, yet the court says: "The declaration alleges as one
ground of the defendant's liability that it knowingly employed an un-
skillful and incompetent person as engineer. The plaintiff does not
contend that there was any evidence to support this allegation."
Even counsel for plaintiff did not contend that the accident was evi-

dence of the incompetency of the engineer. "The difficulty of the plaintiff's case is that the evidence clearly shows that the injury to him was caused by the negligent act of a fellow-servant."

Just so in this case. There is no evidence here upon this point.

Again, in the case of *Kelley* v. *Norcross*, before cited, where the staging fell, the accident happened, but the court said:

"There was no evidence that the men were not in all respects competent workmen, or that the materials provided were unsuitable; and, without some such evidence, there was upon these points no question upon which the plaintiff was entitled to go to the jury. If there was neglect on the part of the carpenters, either in the construction of the staging or in leaving it, after it had been partially constructed, to be continued or completed by the masons, it was the neglect of the fellow-servants of the plaintiff's intestate, who were competent to have properly performed the work."

The mere fact of the negligence was held to be no evidence to go to the jury.

In *Cooper* v. *Mil. & Pra. du C. Ry. Co.* 33 Wis. 671, it was said:

"But all this is to no purpose, so long as it is not shown that the company, its officers or agents, were negligent in the employment of these persons, or in retaining them in its service. The negligence of the company, its officers or agents, in employing careless and unfit servants, is the gist of the action; and unless this be shown there can be no recovery. * * * Aside from the proof of negligence in the servants on the occasion in question, which is, clearly, not enough to charge the company, there is not the slightest evidence showing, or tending to show, negligence on the part of the company in the employment of those servants."

This case is directly in point. These are only a few out of a great many cases deciding that question. There is not a particle of evidence, other than the fact of the accident, in this case that this engine-runner was not entirely competent, or that he was not a careful man. The testimony of the plaintiff shows that the engine-runner had been an engineer long before he went on this mine, and that plaintiff knew it.

The mere fact that he was negligent at this time is not sufficient evidence of his incompetency. There are numerous cases to the same point. There is no testimony sufficient to go to the jury to show his incompetency. And not only must it appear that he was not in fact incompetent, but also that the company did not use due care in employing him. If the allegation were sufficient, there is nothing to show on any of those points that the defendant is liable.

The only other point is as to whether there is anything to go to the jury upon the question of the bell. We are satisfied, on that

point, that there is nothing to justify the jury in finding that the accident resulted from the breaking down of that bell. On the contrary, the testimony shows that the accident resulted from the negligent act of the runner of the engine. No one testifies that plaintiff could have escaped if the bell had been there. The testimony of plaintiff's witness, Cumelford, is that he could not have got out— that there was not sufficient time had the bell rung. The cage came down so rapidly that he could not have got out of the way. There is no testimony that he could have got out of the way. The testimony is that the cage, ordinarily, came down to the place where the bell was and stopped, and only came down from that point at a given signal from below. But this time it did not stop. It was the ordinary practice to stop it within 50 feet of the bottom and there wait until the signal to lower it was given, and then to lower it slowly. But at this time it not only came down without stopping, but it came rapidly.

At the time of the accident it came down with great rapidity. The engineer did not even stop the engine when the cage reached the bottom, for there were some 40 feet of cable piled up on top of the cage. The testimony clearly shows, and there is nothing to the contrary, that the accident resulted purely and solely from the carelessness of the engineer in dropping the cage down at a rapid rate, without stopping or giving any notice. The accident, therefore, resulted from the negligence of a co-laborer in that employment. If the jury were to find, upon such testimony, that the accident resulted from the absence of this bell, we should be compelled to set aside the verdict. We feel bound, therefore, under repeated rulings of the supreme court, to grant the motion, and we shall so instruct the jury.

Instruction and verdict accordingly.

---

MASTER'S DUTY IN SELECTION AND RETENTION OF SERVANTS. A master is under no absolute obligation to employ only fit and competent servants, but he is bound to exercise reasonable or ordinary care to that end.(a) As he is bound to exercise this care in supplying reasonably safe and suitable machinery for the use of his servants, and in maintaining the same in proper repair,(b) so he must exercise such care in hiring and retaining only competent employes. It is well settled that he does not necessarily discharge this

(a) Laning v. N. Y. Central, etc., R. Co. 49 N. Y. 521; Gilman v. Eastern R. Co. 13 Allen, 440; Smoot v. Mobile & M. Ry. Co. 67 Ala. 13; Moss v. Pacific R. Co. 49 Mo. 167; Gunter v. Graniteville Manuf'g Co. 15 S. C. 443.

(b) As to his duty in this respect, see note to O'Neil v. St. Louis, etc., R. Co. 9 Fed. Rep. 341.

duty merely by the appointment of a competent agent to perform it, and that for its negligent performance by such agent the master is responsible.(c)   And his duty is not discharged by the exercise of due care in hiring competent servants merely, but the same care must still be exercised in continuing them in service, " and if he retains an incompetent servant, after knowledge of his incompetency, or when, in the exercise of due care, he ought to have known it, he is as responsible as if he had been wanting in the same care in hiring.(d)   If the master has exercised due care in the selection and retention of his servants, he is not answerable for injuries to a servant through the negligence of a fellow-servant.

WHO ARE FELLOW-SERVANTS.   Upon this question there is no little difference of opinion among the authorities.   The English doctrine, and that held by the weight of authority in this country, is, that all the servants of the same master, engaged in carrying forward the common enterprise, although in different departments, widely separated or strictly subordinated to others, are to be regarded as fellow-servants, bound by the terms of their employment to run the hazard of any negligence of any of their number, so far as it operates to their detriment.(e)   In other words, where the general object to be accomplished is one and the same, the employer the same, the several servants deriving authority and compensation from the same source, all employes and agents, from the highest to the lowest, are regarded as fellow-servants, no matter how remote from each other they may usually be occupied, or how distinct in character and nature may be their respective duties and employments, and without regard to any difference in rank or authority.(f)

FELLOW-SERVANTS, ALTHOUGH IN DIFFERENT DEPARTMENTS OF LABOR. "In order that workmen should be fellow-servants," said Lord CRANWORTH, in *Bartonshill Coal Co.* v. *Reid*,(g) "it is not necessary that the workman causing and the workman sustaining the injury should both be engaged in performing the same or similiar acts.   The driver and guard of a stage-coach, the steersman and the rowers of a boat, the workman who draws the red-hot iron from the forge and those who hammer it into shape, the engineman who conducts a train and the man who regulates the switches or the signals, are all engaged in common work.   And so, in this case, the man who lets the miners down into the mine, in order that they may work the coal, and afterwards brings them up, together with the coal which they have dug, is certainly engaged in a common work with the miners themselves.   They are all contributing directly to the common object of their common employers in bringing the coal to the surface."   To constitute the relation of fellow-servants, "they need not at the time be engaged in the same particular work.   It is

(c) Flike v. Boston, etc., R. Co. 53 N. Y. 549, 553; Gilman v. Eastern R. Co. 13 Allen. 440; Quincy Mining Co. v. Kitts, 42 Mich. 34; Booth v. Boston, etc., R. Co. 73 N. Y. 38.

(d) Shanny v. Androscoggin Mills, 66 Me. 418; Michigan, etc., R. Co. v. Dolan, 32 Mich. 510, 513. But see Chapman v. Erie R. Co. 55 N. Y. 579.

(e) 1 Redf. Railw. § 131.

(f) Wilson v. Merry, L. R. 1 H. L. Sc. App. 326; Bartonshill Coal Co. v. Reid, 3 Macq. 295; Allen v. Gas Co. L. R. 1 Exch. Div. 251; Rourke v. White Moss Colliery Co. L. R. 1 Com. Pl Div. 556; Railroad v. Fort, 17 Wall. 553; Blake v. Maine Cent. R. Co. 70 Me. 60; Albro v. Agawam Canal Co. 6 Cush. 75; Gilsbannon v. Stony Brook R. R. 10 Cush. 228.

(g) 3 Macq. 295.

sufficient if they are in the employment of the same master, engaged in the same common work, and performing duties and services for the same general purposes."(h.)

Thus, in a recent case in the English court of appeals,(i) where the defendants, brewers, contracted with one Ansell to unload a barge of coal for the use of the brewery, at so much per ton, he to hire his help and pay them out of the money received from defendants, but having no power to discharge any employe without the defendant's consent, it was held that a laborer, employed by Ansell in unloading the coal, was a fellow-servant with those at work in the brewery(j). The superintendent of the mill and a common spinner;(k) a master of a vessel and the mate;(l) the heads of different departments of work in the same coal mine, under a common superintendent;(m) a timberman, whose duty it was to attend to the erection and repair of bridges in a mine, and a miner;(n) an under-ground workman in a coal-pit and the engineer at the top of the pit;(o) and an "underlooker" in a coal mine, whose duty it was to see that the roof was securely propped up, and a common laborer in the mine,(p)—have been held to be fellow-servants. Applying this rule to railway service, "all who are engaged in accomplishing the ultimate end in view—that is, the running of the road—must be regarded as engaged in the same general business, within the rule;" e. g., a locomotive engineer and a master mechanic of the railroad;(q) a track repairer and those in charge of the train on which he rode;(r) those in charge of a locomotive and a section-man engaged in repairing the track;(s) the carpenter and those in charge of the train by which he is carried to or from his work, in pursuance of his contract of service;(t) the carpenter and the employes in charge of a turntable;(u) a brakeman and an engineer on the same train;(v) a brakeman on one train, and the conductor or engineer on another train belonging to the same company;(w) a track repairer and the fireman or engineer of a passing train;(x) and the conductor and others in charge of a train sent out to clear the snow from the track and a snow-shoveler carried on the train.(y)

Even under the English doctrine, the remoteness of the duties performed is not wholly immaterial to the determination of the question as to who are fellow-servants. Said Lord Justice COTTON, in *Charles* v. *Taylor*:(a) "Many cases may be put where the master might be liable, as where he carries on two distinct businesses, and a person employed in one of them is injured by the negligence of a person employed in the other." The principle upon which

(h) Lehigh Valley Coal Co. v. Jones, 86 Pa. St. 432.

(i) Charles v. Taylor, 38 Law T. (N. S.) 773.

(j) Compare Rourke v. White Moss Colliery Co. L. R. 1 Com. Pl. Div. 556.

(k) Albro v. Agawam Canal Co. 6 Cush. 75.

(l) Halverson v. Misen, 3 Sawy. 562.

(m) Lehigh Valley Coal Co. v. Jones, 86 Pa. St. 432.

(n) Quincy Mining Co. v. Kitts, 42 Mich. 34.

(o) Bartonshill Coal Co v. Reid, 3 Macq. 266.

(p) Hall v. Johnson, 3 Hurl. & C. 589.

(q) Hard v. Vermont, etc., R. Co. 32 Vt. 473.

(r) Gilshannon v. Stony Brook R. Co. 10 Cush. 228.

(s) Foster v. Minnesota, etc., R. Co. 14 Minn. 360.

(t) Seaver v. Boston, etc., R. Co. 14 Gray, 466.

(u) Morgan v. Vale of Neath R. Co. L. R. 1 Q. B. 149.

(v) Pittsburgh, etc., Ry. Co. v. Lewis, 33 Ohio St. 196.

(w) Pittsburgh, etc., R. Co. v. Devinney, 17 Ohio St. 197.

(x) Whaalen v. Mad River, etc., R. Co. 8 Ohio St. 249.

(y) Howland v. Milwaukee, etc., Ry. Co. 51 Wis. 22.

(a) 38 Law T. (N. S.) 773, 775.

such cases would rest may be gathered from the opinion of Justice BLACKBURN in *Morgan* v. *Vale of Neath R. Co.*,(*b*) where he says: "There are many cases where the immediate object on which the one servant is employed is very dissimilar from that on which the other is employed, *and yet the risk of injury from the negligence of the one is so much a natural and necessary consequence of the employment which the other accepts,* that it must be included in the risks, which are to be considered in his wages."

The converse of this proposition legitimately follows, and is sustained by some of the American courts. The principle was thus stated by HILLYER, J., in *Kielley* v. *Belcher Silver Min. Co.*, (*c*)referred to in the principal case: "That the servant, having voluntarily entered into a contract of service to do a specified work for a specified compensation, has thereby accepted the ordinary perils incident to doing that work; and whenever the negligence of another employe of the same master can be considered an ordinary risk, one which he might reasonably anticipate at the time of making his contract, he accepts also the perils liable to happen through such negligence. And it seems clear that upon this principle those only are fellow-servants for whose negligence, one to another, the master is exempt, who serve in such capacity, and in such relation to the master and each other, that the means of the servants to protect themselves are equal to or greater than those of the master to afford them protection, and that, further than this, justice and policy forbid us to carry the implied portion of the contract of service. Beyond this, an injured servant has as clear title to relief against the master as a stranger, upon the maxim of *respondeat superior.*" If the true reason for the master's exemption is, that the servant has taken the risk of the negligence of his fellows into account when fixing his wages, then he should be held to have assumed only the risks which he could reasonably anticipate when accepting the service.(*d*) Applying this test, it was held that a draughtsman in a locomotive works was not a fellow-servant with a carpenter employed in "jobbing" for the proprietor, or with laborers engaged in excavating a cellar under the building, under the directions of the carpenter;(*e*) nor a carpenter in the service of a railway company with those in charge of a train on which he is carried to and from his work;(*f*) nor a section hand, on a railroad several hundred miles in length, with the conductor and engineer of a train;(*g*) nor a laborer, employed by a stevedore to unload a vessel, with the mate.(*h*)

There are other American courts that deny the English doctrine upon this point, but base their conclusion upon different grounds. It is said that the master's exemption rests upon grounds of public policy—upon the expediency of throwing the risk of injury upon those who are best able to guard against the dangers. A master is not, therefore, liable for an injury inflicted by one servant upon another, where the two are co-operating with each other in a particular business at the time of the injury, or are, by their usual duties,

(*b*) 5 Best & S. 570, 580; S. C. 33 Law J. (Q. B.) 260.

(*c*) 3 Sawy. 500.

(*d*) Baird v. Pettit, 70 Pa. St. 477, 482.

(*e*) Baird v. Pettit, 70 Pa. St. 477, 482.

(*f*) O'Donnell v. Allegheny, etc., R. Co. 59 Pa. St. 239.

(*g*) Nashville, etc., R. Co. v. Carroll, 6 Heisk. 347.

(*h*) Mullan v. Philadelphia, etc., S. S. Co. 78 Pa. St 25. Whether they were fellow-servants was a question for the jury.

brought into habitual consociation, because they have the power of influencing each other to the exercise of constant caution in the master's work (by example, advice, and encouragement, and by reporting delinquencies to the master) in a great, and in most cases a greater, degree than the master. Where the servants have no opportunity for such influence over each other, the reason for the master's exemption no longer exists. Accordingly, in a recent case in Illinois, where this doctrine is elaborately considered and the authorities reviewed, it was held that a railway company was liable to a track repairer, who, while standing by the track, was struck and injured by a piece of coal carelessly thrown from the tender by the fireman of a passing train.(i)  Similarly, an engine-driver of a railway has been held not to be a fellow-servant with a laborer in the company's carpenter-shop.(j)  And the same doctrine has been held and applied in other states.(k)

FELLOW-SERVANTS, ALTHOUGH ONE IS SUBJECT TO THE AUTHORITY OF THE OTHER. Said COCKBURN, C. J., in the case of *Howells* v. *Landore Steel Co.*:(l) "Since the case of *Wilson* v. *Merry*,(m) in the house of lords, it is not open to dispute that, in general, the master is not liable to a servant for the negligence of a fellow-servant, though he be the manager of the concern;" and the certified manager of a colliery, appointed under a statute, was held a fellow-servant with a worker in the mine. By the weight of authority in America as well as in England, the fact that the negligent servant is superior in authority to the injured servant, that he hires and may discharge him, and may direct him as to his work, does not enlarge or modify the master's liability.(n)

But this rule is not accepted, without modification, in this country. *First.* There are a number of authorities that hold that if the master has placed the entire charge of the business in the hands of an agent, exercising no authority and no superintendence of his own therein, such agent represents the master, and for his negligence the master is responsible to his servants.(o) "Owing to the fact that the business of corporations is transacted by means of agents, they would escape the just measure of liability, unless the rule applied to them. In this respect, both as to liability and for protection, they stand on the same footing with individuals."(p)  *Second.* By other authorities the rule is denied altogether, and it is held that if the relation of superior and subordinate is shown to exist between the negligent and the injured servant, the latter being subject to the orders and contract of the former, the master is

(i) Chicago, etc., R. Co. v. Moranda, 93 Ill. 302.

(j) Ryan v Chicago, etc., R. Co. 60 Ill. 171.

(k) Cooper v. Mullins, 30 Ga. 146; Louisville, etc., R. Co. v. Cavens, 9 Bush, 559; Nashville, etc., R. Co. v. Jones, 9 Heisk. (Tenn.) 27.

(l) L. R. 10 Q. B. 62.

(m) L. R. 1 H. L. Sc. App. 323.

(n) Murphy v. Smith, 19 C. B. (N. S.) 361; Gallagher v. Piper, 16 C. B. (N. S.) 669; Zeigler v. Day, 123 Mass. 152; Marshall v. Schricker, 63 Mo. 308; Lawler v. Androscoggin R. Co. 62 Me. 463; Peterson v. Whitebreast Coal & Mining Co. 50 Iowa, 673; O'Connell v. Baltimore, etc., R. Co. 20 Md. 212; Malone v. Hathaway, 64 N. Y. 5; Curran v.

Merchants' Manuf'g Co. 130 Mass. 374; McCosker v. Long Island R. Co. 84 N. Y. 77; Keystone Bridge Co. v. Newberry, 95 Pa. St. 246.

(o) Lehigh Valley Coal Co. v. Jones, 86 Pa. St. 432; Mullan v. Philadelphia, etc., S. S. Co. 78 Pa. St. 25; Gormly v. Vulcan Iron Works, 61 Mo. 492; Kansas, etc., R. Co. v. Little, 19 Kan. 269; Malone Hathaway, 64 N. Y. 5; Beeson v. Green Mountain Gold Mining Co. 57 Cal. 20.

(p) Lehigh Valley Coal Co. v. Jones, 86 Pa. St. 432; Howells v. Landore Steel Co. L. R. 10 Q. B. 62, Blackburn, J.; Allen v. New Gas Co. 1 Exch. Div. 251.

liable.(*q*) Accordingly, a quarryman and the foreman of the quarry;(*r*) a brakeman and the engineer or conductor of a freight train;(*s*) a railroad laborer in building a culvert and the superintendent under whose orders he acted;(*t*) an architect and a superintendent, having general charge of the erection of a building, and a workman thereon;(*u*) the "section-boss" on a railroad and the workmen under him;(*v*) the conductor of a construction train and a boy of seventeen, employed as a laborer on the train,(*w*)—have been held not fellow-servants. *Third.* The test laid down by the New York courts is, that, in order to charge the master, the superior servant must so far stand in the place of the master as to be charged with the performance of duties towards the inferior servant, which, under the law, the master owes to·such servant.(*x*) In the late case of *Crispin* v. *Babbitt,*(*y*) where it was left to the jury to determine whether the "business and financial man" in charge of the defendant's iron works was a fellow-servant with the plaintiff, a laborer in the works, who was injured by the act of the agent in carelessly turning on the steam of an engine by which the plaintiff was standing, Judge RAPELLO states the New York rule thus: "The liability of the master does not depend upon the grade or rank of the employe whose negligence causes the injury. A superintendent of a factory, although having power to employ men or represent the master in other respects, is, in the management of the machinery, a fellow-servant of the other operatives. On the same principle, however low the grade or rank of the employe, the master is liable for injuries caused by him to another servant, if they result from the omission of some duty of the master which he has confided to such inferior employee. * * * The liability of the master is thus made to depend upon the character of the act in the performance of which the injury arises, without regard to the rank of the employe performing it. If it is one pertaining to the duty the master owes to his servants, he is responsible to them for the manner of its performance. The converse of the proposition necessarily follows. If the act is one which pertains only to the duty of an operative, the employe performing it is a mere servant, and the master, although liable to strangers, is not liable to a fellow-servant for its improper performance." Hence, as it is the master's duty to furnish his servants with reasonably safe machinery and to keep the same in proper repair, the agent or servant to whom he delegates this duty is not the fellow-servant of the one who uses the machinery, as has been decided in a large number of cases,(*a*) though the contrary is maintained in England and in some American courts.(*b*) The inspector of the machinery and appliances of a

(*q*) Little Miami R. Co. v. Stevens, 20 Ohio, 415; Pittsburgh, etc., Ry. Co. v. Devinney, 17 Ohio St. 197, 210; Knoxville Iron Co. v. Dodson, 7 Lea, (Tenn.) 367, 377. Compare Kumler v. Junction, etc., R. Co. 33 Ohio St. 150.

(*r*) Berea Stone Co. v. Kraft, 31 Ohio St. 287.

(*s*) Cowles v. Richmond, etc., R. Co. 84 N. C. 309. Compare Pittsburgh, etc., Ry. Co. v. Lewis, 33 Ohio St. 196.

(*t*) Kansas, etc., R. Co. v. Little, 19 Kan. 269.

(*u*) Whalen v. Centenary Church, 62 Mo. 226.

(*v*) Louisville, etc., R. Co. v. Bowler, 9 Heisk. (Tenn.) 866.

(*w*) Chicago, etc., R. Co. v. Bayfield, 37 Mich. 205.

(*x*) Hofnagle v. New York, etc. R. Co. 55 N. Y. 608; Flike v. Boston, etc., R. Co. 53 N. Y. 549.

(*y*) 81 N. Y. 516.

(*a*) Fuller v. Jewett, 80 N. Y. 46; Booth v. Boston, etc., R. Co. 73 N. Y. 38; Wedgwood v. Chicago, etc., R. Co. 41 Wis. 478; Shanny v. Androscoggin Mills, 66 Me. 420.

(*b*) Columbus, etc., R. Co. v. Arnold, 31 Ind. 174; Wonder v. Baltimore, etc., R. Co. 32 Md. 411; Harrison v. Central R. Co. 31 N. J. Law, 293; Waller v. South-eastern R. Co. 2 Hurl. & C. 102;

railroad is not a fellow-servant with the brakeman of a train,(c) or with the engineer.(d) But the workmen employed in a machine-shop of a railway company are fellow-servants, so that if a boiler, sent to the shop for repair, explodes and injures a workman by reason of the negligence of another workman through whose hands it has passed in course of repair, the company is not liable, though it would have been otherwise had it been placed in the hands of an employe for *use*.(e)     WAYLAND E. BENJAMIN.

Searle v. Lindsay, 11 C. B. (N. S.) 429; Conway v. Belfast, etc., R. Co. I. R. 9 C. L. 498.
(c) Long v. Pacific Railroad, 65 Mo. 225.

(d) Darkin v. Sharp, 88 N. Y. 225.
(e) Murphy v. Boston, etc., R. Co. 88 N. Y. 146.