# NEW YORK SUPERIOR COURT.

THOMAS LOONAM,· appellant. agt. WILLIAM E. BROCKWAY,
·respondent.

A *master* is not liable for injuries to his *servant* while using machinery in the
employment of the master, if the servant has the same means of knowledge of
its safety as the master; and at or before the time the accident occurred there
was nothing to indicate any danger such as demanded or suggested precautions
which were omitted.

*General Term, December,* 1864.
*Before* MONCRIEF, GARVIN *and* McCUNN, *Justices.*

THIS action came on to be tried before one of the jus-
tices of this court and a jury; upon the plantiff resting
his case, the defendant moved to dismiss the complaint,
and the court granted the motion.   The plaintiff excepted.
Whereupon the exceptions were directed to be heard at
the general term in the first instance, and the entry of
judgment in the meanwhile to be suspended.

EDWIN JAMES, *for appellant.*
H. T. BUCKLEY, *for respondent.*

By the court, MONCRIEF, J.   It was said in Cook agt.
*Bell* (30 *Jur.* 75 20 *D. P.* 137), " this case was tried before
a justice of this court and a jury, and the argument was
then as now very fully gone into.   But, although the case
was then fully heard and fairly tried, we do not regret that
this appeal was taken and discussed at great length, for it
enables us to review the whole matter in a case where our
leaning, if any, will naturally be with the plaintiff.   When
the labor to be performed is hazardous, it is fair to presume
that it is also more than usually remunerative. . This was
not an action for injury arising from defect of machinery,
or any defect of that nature; the plaintiff wrought, it may

be, under constant peril; that danger and peril were the ordinary condition of that species of labor."

The learned counsel for the plaintiff conceded that this action was not brought for an alleged defect of machinery, but contended, as the complaint avers, that it was, in fact, the duty of the defendant to take due and proper care, and to provide all proper means to insure the reasonable safety of the plaintiff as his servant, in the use and application of the said steam, &c., and alleges that the want of a guage to check and control the power and quantity of steam was negligence on the part of the defendant, for which, in law, he must respond in damages to the plaintiff. There is no allegation that the defendant knew, or ought to have known, of anything omitted necessary for the protection of the plaintiff in the use of the steam, or that he was as well aware of the danger in its use as the plaintiff him-self. The facts out of which the alleged duty of the defendant arises are not stated; it does not proceed from statute, as in England, with reference to fencing machinery, nor by contract, express or implied, as the apparatus was not defective, and was in the same condition at the time of the accident as it was when the plaintiff began his employment. The liability of the defendant would arise only from the fact that he was the cause of the injury by employing his servant in work, knowing that the machinery by which he carried on the work could not be safely used for that purpose, and that its use was accompanied by risk and danger (*Potts* agt. *Plunket, Amer. Law Regis. vol.* 7, *p.* 553.). Such knowledge on the part of the defendant is the gist of the action. In England, a declaration without such an averment would be held bad on demurrer. (*Vose* agt. *L. Y. R. Co.* 27 *L. J.* 249 ; 2 *Hur. & Nor.* 213 ; 4 *Jur.* 769 ; 25 *L. I.* 339 ; *Williams* agt. *Clough,* 3 *H. & N.* 258 ; *Priestley* agt. *Fowler,* 3 *M. W. R.* 1 ; *Potts* agt. *Plunket, supra, and Irish Jurist.*)

It has been held otherwise here (*Byron* agt. *N. Y. State*

*Printing Telegraph Co.* 26 *Barb. R.* 39). The point was not raised in *Keegan* agt. *The Western R. R. Co.* (4 *Selden Rep.*, 175). In the former case it was held that "the allegation of negligence would be sustained by proving the danger from the defect in the pole and that it was known to the defendants." There was no such evidence adduced upon this trial; on the contrary it would appear that the defendant did not consider the employment hazardous, as he illustrated the process to the plaintiff, and the latter successfully pursued the occupation without accident or complaint for fifteen days. It was not pretended that the defendant knew or had reason to believe that any defect or imperfection of the apparatus used by the plaintiff existed until after the accident happened. The proper inquiry is, whether, at or before the time the accident occurred, there was any indication of danger such as demanded or suggested precautions which were omitted. As nothing happens without a cause, so perhaps no accident ever occurred as to which suggestions might not afterwards be made by which it might have been prevented. The plaintiff, if he had discovered any imperfection or insufficiency, had not advised the defendant; the latter does not appear to have been present while the plaintiff was engaged at his work, except upon the first day. "There is nothing legally wrong (*says* BRAMHALL, *B, in Dynen* agt. *Leach,* 26 *Law Journ. Exch.* 221) in the use of an employer of works or machinery, more or less dangerous to his workmen, or less safe than others that might be adopted. It may be inhuman for an employer to carry on his works so as to expose his workmen to the peril of their lives; but it does not create a right of action for an injury which it may occasion, where the workman has known all the facts and is as well acquainted as the master with the machinery, and voluntarily uses it." In *Williams* agt. *Clough* (3 *Hur. & Nor. Rep.* 258), the said learned Judge said, "I abide by the opinion I expressed in the case referred to (just

quoted), that a master cannot be held liable for an accident to his servants while using machinery in his employment, simply because the master knows that such machinery is unsafe, if the servant has the same means of knowledge as the master." It was held in *Assop* agt. *Yates* (2 *Hur. & Nor. R.* 767), " that the plaintiff could not recover for injuries, because after he had complained of the heating, and knowing all the circumstances, he voluntarily continued at work."

The cases of *Griffiths* agt. *Gidlow* (3 *Hur. & Nor. R.* 648); *Scrip* agt. *The Eastern Counties Railway Company, post*, in principle, are singularly like the one under consideration. In the first there was evidence that the hook by which the barrel was attached which drew it up was not safe : that it ought to have a spring hook, which it was alleged, would have prevented the misfortune which led to the accident. " The answer to this (*says* WATSON, *B. p.* 655) seems to us to be that the plaintiff himself knew the hook and worked with it himself, possibly attached it to the tub or barrel which afterwards fell upon him, and seems never to have made any observations or complaint in respect to it. We think that a servant so acting cannot maintain an action against an employer. He himself was contributory to the injury, and as it was stated by Lord CRANWORTH, in the case in the House of Lords (*Patterson* agt. *Wallace*, 1 *Macqueen*, 748), it is essential for the plaintiff or pursuer to establish that the injury arose from no rashness of his own."

In *Scrip* agt. *The Eastern Counties Railway Co.* (23 *Law. Jour. Rep.* 23), the plaintiff was a railway guard on defendants' line. His duties were to attach goods' carriages to the engine, and dispatch them to a particular station. He was occasionally assisted by a porter. On the 5th of July, 1852, it was necessary to shift the carriages from one line to another, and within a limited time, in order to prevent a collision with a down passenger train, which would shortly be due. While he was in the performance of this work,

and for the want, as he said, of an additional person to assist him, the engine started and he was thrown on the rails, and his arm was crushed, and had to be amputated. He had been three months in the service of the company. He sued the company for damages, alleging that it was the duty of the defendants to take all due precautions to prevent unnecessary danger, and that in consequence of their neglecting to assign some one to assist him in the present instance, he had met with the accident. The court of exchequer held that the company was not liable. .* * * If there was danger, and great precaution was necessary, the plaintiff in the present action being the sole operator, might have left the employ of the defendant, or omitted to turn the steam into the barrel, or have turned off the steam when he found the water he had put into the barrel by contact with the steam was, as he testified, "boiling like mad." Again, the accident can be attributed to human fallibility, in that the plaintiff hammered the " plug " down into the barrel so tight that even the alleged extraordinary pressure of steam emitted into the barrel for five minutes, failed to send the plug out, and the barrel gave way. The consequence of his voluntary act under such circumstances, cannot be visited against the defendant, however distressing the calamity which befell him, permanently disabling him from pursuing many of the occupations of life.

We might with great propriety, have rested our disposition of this case upon the reasons assigned by the learned judge upon dismissing the complaint, and the case there cited, *Wright* agt. The *N. Y. Central Railroad Co.* (25 *N. Y. R.* 566), but in justice to the learned counsel who so ably argued the exceptions, we have carefully examined all the authorities cited by them, as well as some others to which we have alluded.

The complaint was properly dismissed. The exceptions must be overruled, and judgment be entered for the defendant.