## PATRICK McGLYNN v. WILLIAM BRODIE AND JOHN McHAFFIE.

LIABILITY OF EMPLOYER TO EMPLOYÉ FOR INJURIES CAUSED BY ACCIDENTS.—If an employé works with or near machinery which is unsafe and from which he is liable to sustain injury by reason of its being unsafe, with the knowledge or the means of knowledge of its condition, he takes the risk incident to the employment, and cannot maintain an action against his employer for injuries sustained by reason of the defective condition of the machinery.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

The plaintiff appealed.

The other facts are stated in the opinion of the Court.

*Edward Tompkins*, for Appellant.

*Tod Robinson*, and *Jno. R. Jarboe*, for Respondents.


By the Court, SAWYER, J.:

This is an action to recover of the owners of a foundry damages for an injury sustained by plaintiff while in the employment of the defendants, from the falling upon him of that portion of the machinery of the foundry used for melting iron, known as the "cupola." The complaint alleges, "that the falling of said cupola was caused by the same being insecurely, negligently and improperly secured and supported by the defendants; that it was so erected and placed by them that it was unsafe and dangerous; that plaintiff had no knowledge that the same was insecure, and was working, by order of defendants, so near at the time it fell that it fell upon him and injured him, as aforesaid; and that if the same had been properly secured and fastened by said defendants, as it was their duty to do, that the same would not have fallen."

The plaintiff was nonsuited at the close of his testimony, and the question is, whether his testimony was such as entitled him to have his cause submitted to the jury. The only witness examined on behalf of the plaintiff was the plaintiff himself, and he must be presumed, at least, to have stated as strong a case in his own behalf as the facts would justify. He testified to the falling of the cupola and the injury; that he was at work for defendants in the foundry near the cupola picking up bricks at the time it fell; that the cupola was a structure of iron and brick, perhaps twenty feet high—the furnace in which iron was melted; that "the cupola was being repaired the day before it fell;" that "Brodie, one of the defendants, ordered it repaired," and "that he supposed it safe at the time it fell." This is substantially the entire testimony in chief. On cross examination, he testified: "I know the cupola was repaired the day before it fell, because Fitz-

48

patrick repaired it, and I helped him as directed. Fitzpatrick was a working man in the foundry of defendants, and in their employ, and was one of defendants' men. We had been working at it about all the day before. I did not know whether he had finished the job. * * * I was at work with Fitzpatrick repairing the cupola. He was the furnace man of the foundry, and had the cupola under his charge; was convenient to it when it fell. I don't know what he was doing upon it when it fell. I was picking up bricks at the time. He was near the furnace at the time; I cannot tell how near. The furnace was not lighted that morning. I do not know what Fitzpatrick was doing, or whether he was in or under the furnace. I was three or four feet from it." He then states that he had not seen either of the defendants about the furnace that morning, nor at the repairing of the cupola; that "Fitzpatrick, their workman, was the man who repaired the furnace;" that "his (Fitzpatrick's) speciality was the furnace part of the foundry." On further examination in chief, he testifies as follows: "Fitzpatrick was the melter and founder of the foundry. He was not a mason, to my knowledge. I was under Fitzpatrick's orders by direction of William Brodie, the defendant. The furnace rested on a foundation of brick, with iron posts. Fitzpatrick took out some of the foundation. In making the repairs the foundation had to be fixed some. The repairs were made because Brodie, the defendant, had told Fitzpatrick that the furnace was bent over, and to repair it. I had no control or direction over the work done to repair it. I only obeyed orders." This is the entire testimony material. Numerous cases have been cited upon the point, as to whether the employé is liable to one servant for damages resulting from injuries received in the course of his ordinary employment in consequence of the negligence, malfeasance or misfeasance of a co-servant engaged in the same employment, and an attempt has been made to distinguish the case. But, upon the view we take, it will be unnecessary to consider the propriety of the rule established, or its applicability to the facts of this case. The testimony

shows that there was a cupola, which had been in use; that it had become "bent over," and out of repair; that "the foundations had to be fixed some;" that being out of repair and in an unsafe condition, the proprietors, the defendants, directed it to be put in repair, and designated Fitzpatrick whose "speciality was the furnace part of the foundry," and the plaintiff to do the work, and they did do it, plaintiff working under the direction of Fitzpatrick. The plaintiff was therefore fully informed of the condition of the cupola, and knowing its condition did not decline the work. He was engaged with Fitzpatrick in making the repairs during the preceding day. He therefore knew, for he had the opportunity to know, its exact condition far better than the defendants, who do not appear to have been about the cupola at all during the time Fitzpatrick and plaintiff were at work upon it. As we read the testimony, the repairs were not yet completed, and the parties, Fitzpatrick and plaintiff, were resuming their labors upon it when the accident occurred. But whether actually completed the night before, and the parties were engaged in other work about it or not, is not material. It had not been used since the repairs had been made, and was in the condition in which those who worked on it left it. The risk of the accident was a risk incident to the employment in which plaintiff was engaged. Possessed of all the knowledge which defendants had as to the condition of the cupola, and with an opportunity of becoming better informed in the progress of the work in which he was engaged, plaintiff accepted the employment and continued in it down to the moment of the accident. Where a party works with, or in the vicinity of a piece of machinery insufficient for the purposes for which it is employed, or for any reason unsafe, with a knowledge or means of knowledge of its condition, he takes the risk incident to the employment in which he is thus engaged, and cannot maintain an action for injuries sustained arising out of accidents resulting from such defective condition of the machinery. This is the principle established by all the cases. This want of knowledge on the part of plaintiff is

assumed as an essential condition of the right to recover in *McGatrick* v. *Wason*, 4 Ohio St. R. 569, where the action was brought upon injuries resulting from the breaking of machinery by means of which the plaintiff was hoisting goods aboard a vessel. The Court say: "He was liable for the injury, if it resulted from his neglect, or that of the master, to provide suitable machinery—the defect in the machinery *being unknown to McGatrick*. The general rule is, that an employer who provides the machinery, and oversees and controls its operations, must see that it is suitable; and if an injury -to the workmen happen by reason of a defect *unknown to the latter*, and which the employer, by the use of ordinary care could have cured, such employer is liable for the injury." (575.) So in a recent case in Connecticut, it was held that an employé cannot recover for an injury suffered in the course of his employment from a defect in the machinery used by the employer, unless the employer knew, or ought to have known of the defect and the employé did not know it, or had not equal means of knowledge. The Court say: "The employé here was acquainted with the hazards of the business in which he was engaged, and with the kind of machinery made use of in carrying on the business. He must be held to have understood the ordinary hazards attending his employment, and therefore to have voluntarily taken upon himself the hazard when he entered into defendant's service." (*Hayden* v. *Smithville Manufacturing Company*, 29 Conn. 558.) The Court, citing *William* v. *Clough*, 3 Hurl. & Norm. 258, say: "The defendant was sued by a servant who fell through a ladder used in a brewery. He did not succeed in his action. The servant was regarded as having the same means of knowledge as to the character of the ladder that his master had, and was bound to judge for himself of the danger of climbing it. This is the language of Barnwell, Baron in Exchequer: 'I abide by the opinion I expressed in the case referred to, that a master cannot be held liable for an accident to his servant while using ordinary care in his employment, simply because the master knows that the machinery is unsafe, *if the servant has the same*

*means of knowledge as the master.*'    The same is held in *Grif-fiths* v. *Gidlow*, Ib. 648."    (559.)    In *Dynen* v. *Leach*, 40 E. L. and E. 492, the party injured was a laborer in a sugar refinery, whose duty it was to fill sugar moulds and hoist them by means of machinery to the higher floors of the warehouse. The mode had been to place them in net bags, which effectually prevented accidents.    Afterwards, the defendant, from motives of economy, substituted a kind of clip which laid hold of the rim of the mould.    On the occasion when the accident occurred, the intestate had filled the mould and fastened it to the clip.    While being raised, "the clip by some jerk slipped off the mould, which fell on his head and killed him."    Upon this state of facts being shown by the evidence the Judge nonsuited the plaintiff, and the nonsuit was afterward sustained.    In deciding the case Mr. Baron Barnwell said: "It may be inhuman so to carry on his works as to expose his workmen to peril of their lives, *but it does not create a right of action for an injury which it may occasion, when as in this case, the workman has known all the facts and is as well acquainted as the master with the nature of the machinery and voluntarily uses it;*" and Mr. Baron Channel said: "If I were to speculate on the cause of the accident I should be disposed to think that it was the careless fixing of the clip by the defendant himself.    But we cannot speculate on that point; and I *rest my judgment on the ground that the deceased himself continued in the employ of the defendant and in the use of the clip with full knowledge of all the circumstances*, so that he directly contributed to the accident."    (494.)    The only difference between that case and this is, that, in the former, the party used the machinery itself, and in the latter, he continued in the employment and worked either on or immediately around the defective machinery with full knowledge of all the circumstances, and thereby contributed to the accident by being sufficiently near it to be struck in its fall.    The principle in both cases is, that the party continued in his ordinary employment under circumstances which rendered him liable to be injured by the defective machinery, with a know-

ledge of the circumstances, and, therefore, took the risks inci-
dent to the employment. The same principle is involved in
*Skipp* v. *Eastern Co. Railway Company*, 9 Ex. 223. The
plaintiff was injured in endeavoring to couple the train to the
locomotive. " The time allowed was limited," and " evidence
was given to show that the work was too much for the num-
ber of servants employed by the company, but it did not
appear that the plaintiff had ever made any complaint upon
the subject to the company." It was insisted that plaintiff
ought to recover on that ground ; but he was nonsuited and
the nonsuit sustained. Mr. Baron Martin said : " The plain-
tiff brought the accident upon himself, for, if he found that he
could not do the work which was set him, he ought to have
declined it in the first instance." The principle is the same,
for it can make no difference whether the party works with
defective or insufficient machinery, or in close and dangerous
proximity to it, or with an insufficient number of hands to per-
form the labor with safety. In either case, if he has knowledge
of the circumstances, he is equally culpable and he assumes the
risk. (See, also, 6th edition of Story on Agency, the several
divisions of Sec. 453 and notes and cases cited.) The case of
*Aldrich* v. *Palmer*, 24 Cal. 513, has no application. Nor did
that case, as supposed by counsel, involve the principle of the
cases relating to the liability of the master for injuries to a
servant resulting from the negligence or carelessness of a
fellow servant in the same employment. It is true the point
was made by counsel, but the facts of the case, in the opinion
of the Court, did not present the question, and it was neither
discussed nor decided. In *Hallower* v. *Henley*, 6 Cal. 210,
which is the strongest case in this State, and which, perhaps,
goes to the verge of the rule established by the authorities,
the Court take especial care to recognize the principle adopted,
for it is said : " The jury in the present case have found by
their verdict a want of care in providing a suitable and safe
means by which the plaintiff could perform his labor, *which
fact was unknown to him* at the time of the accident." Indeed,
the attorney for appellant in the case at bar seems to be well

aware of this legal principle, for he has not overlooked the necessity of averring in his complaint the essential fact " that plaintiff had no knowledge that the same was insecure." Any other rule would place the defendants in a very embarrassing position, for the cupola having got out of repair and become dangerous, they were liable to become responsible for accidents that might result from allowing it to continue in that condition ; and, if plaintiff can recover, they are also responsible for injuries arising to those at work on and about it, in attempting to remedy the evil by putting it in a safe condition. It would be hazardous for defendants to allow the cupola to continue in an unsafe condition, and equally hazardous to employ workmen to put it in a safe condition. The plaintiff's own testimony, clearly shows, that he was as well, and even better informed of the condition of the cupola, than the defendants, for he knew it was ordered to be put in repair because it had become " bent over " and required repairing, and worked upon it making the repairs. He, therefore, had an opportunity of knowing the nature of the defects, which his employers, who were not about it while the repairs were going on, had not; and having this knowledge, he must be deemed to have continued in his employment on and about the cupola at his own risk.

The judgment is affirmed.