BUNT and others *v.* SIERRA BUTTES GOLD MIN. Co.[1]

*(Circuit Court, D. California.*   September 2, 1885.)

1. PRACTICE—NONSUIT—DIRECTING JURY TO FIND FOR DEFENDANT.
    In the circuit court a nonsuit will not be granted at the close of plaintiff's case; but when the evidence fails to make out a *prima facie* case, the proper practice is to move the court to instruct the jury to find for the defendant.

2. SAME—MOTION, WHEN GRANTED.
    Where the evidence is such that the court would feel bound to set aside any verdict in favor of plaintiff, it should direct a verdict for defendant.

3. MASTER AND SERVANT—ASSUMING RISK OF KNOWN DANGER.
    An employe in a mining tunnel, who, knowing that the roof of the tunnel is in an unsafe condition at a certain point, while employed in making it safe sits down under the dangerous point during a suspension of the work, and is killed by the falling of the roof, is guilty of contributory negligence, and the owners of the mine will not be liable.

Motion to Instruct Jury to Find for Defendant.

*J. C. Black*, for plaintiffs.

*Harry I. Tornton* and *Eugene R. Garber,* for defendant.

SAWYER, J.   At the conclusion of plaintiff's testimony in this case on yesterday, the counsel for the defendant moved the court to instruct the jury to find a verdict for the defendant, on the testimony introduced by the plaintiff, on the ground that, upon the case made by the plaintiff's evidence, all taken as true, the defendant is not liable; that, taking the evidence in its strongest light against the defendant, the plaintiff presented no case upon which she is entitled to recover.   In such cases a motion of this kind is the proper practice in this court.   The application is a substitute for a motion for nonsuit in the state courts.   This court never grants a nonsuit; the proper motion being to instruct the jury to find a verdict for the defendant.   This case, like many others of a somewhat similar character that I have had occasion to try, is one that necessarily excites sympathy in favor of the plaintiff.   We are bound, however, to be governed by the rules of law, and the legal rights of the parties. On an examination of the authorities presented by the counsel last night, and in view of numerous others that I have before had occasion to examine, I am satisfied that this is not a case in which the plaintiff is entitled to recover.   All of the numerous cases cited by plaintiff's counsel have other features that distinguish them from this case and cases like it.

[1] See note at end of case.

Taking the evidence presented by plaintiff as all true, and viewing it in the light most favorable to her, it does not present a case in which, under the law, she is entitled to recover. In excavating the tunnel, the roof, according to all the testimony, was left solid at first. It was originally a roof of solid rock, but subsequent blasts beyond had somewhat shattered it. In October, and just before the accident which caused the death of the plaintiff's husband, the superintendent of the mine was in the tunnel, and he saw that the roof looked somewhat shattered. He examined it, striking the roof at various points with a pick, and found that it might be dangerous. He thereupon directed those working in the tunnel, of whom the deceased was one, to put in a set of timbers to support the roof. There was one post only there, but, according to the testimony, which was not contradicted, it was not put there to support the roof; but placed in a narrow seam in the side of the tunnel, to prevent the light, soft vein matter from running into the tunnel from the side; and not for the purpose of supporting the roof. One of the two men in charge,—there being two in equal authority, of whom the deceased was one,—George Dubourdieu, asked the question, if it would not be better to remove that post, and put in the set, so that one of the posts of the set should stand in the same cut occupied by the post already there. The superintendent told him that if they thought they could do 'it with safety, they might do it in that way; but to satisfy themselves that it would be safe before moving the post, and if it would not be safe, to set one of the posts of the new set by the side of that post, a little beyond it. The deceased with George Dubourdieu and the others had a conference on the subject, and considered the question whether they could remove the post there standing with safety, and they came to the conclusion that they could. They acted on their own judgment. Both deceased and George Dubourdieu were experienced miners, who had been a long time at work in this tunnel, and were doubtless as well informed on the question, and as well qualified to judge of the safety of the act, as the superintendent himself. On examination deceased assented to the conclusion with the others. They discussed the question, and concluded that they could remove the post without danger, and put one of the set in its place. They proceeded to do that. The post was knocked out. The deceased assisted in moving it out of the way. He was just as well informed of the condition of that roof, and the dangers attending the work, as was the superintendent himself. He was consulted in regard to it, formed his own opinion as to the danger involved, and concluded that the removal could be made with safety. The men— and he was one of the shift bosses—acted on their own judgment in the matter. It is manifest that they were parties who were capable of judging of those matters. In proceeding to do that work, and knowing the danger, they voluntarily took the risk. I think this is a much stronger case for the ruling I make than *McGlynn* v. *Brodie*,

31 Cal. 376, in which the question arose on a motion for nonsuit, and where all the authorities on the subject are fully discussed. That was a case in the state court, and the nonsuit was sustained by the supreme court of the state. This is a much stronger case for the ruling I make than that case. So, in *Kielley* v. *Belcher S. Min. Co.* 3 Sawy. 502, which was a case in Nevada, not clearer than this, I was compelled to rule in favor of the defendant. The deceased in this case was just as well informed as the defendant or the superintendent himself was, and voluntarily, with knowledge of the danger, assumed the risk of the work. It was not, therefore, the fault of the defendant. In this case there was no defective machinery at all. It was the condition of the roof in the tunnel, produced in part by the act of the deceased in blasting.

If the accident could be regarded as the result of the carelessness of George Dubourdieu, the latter was a fellow-servant, and there is no liability on that ground. *Buckley* v. *Gould & C. S. Min. Co.* 8 Sawy. 395; S. C. 14 Fed. Rep. 833. But deceased had equal authority with George Dubourdieu, and he himself was consulted, and the negligence was as much his own as of George Dubourdieu. More than that, at the moment when the accident happened the deceased was not actually engaged in doing anything relating to that matter. His duty at the time of the accident did not require him to be in the position of danger at all. He had performed the duty of removing the post from the place, and put it out of the way, and he was at the time not engaged in the performance of any duty connected with the work. Having a little leisure, while the other workmen were clearing out the place to put in the other timbers, he sat down to rest himself, and deliberately sat directly under the shattered roof. Knowing its condition, he voluntarily selected that place for a seat upon which to rest himself. He was doing nothing at the time. There was, at that time, no occasion at all for him to sit or be at the point where the accident occurred. He assumed voluntarily, for his own convenience and comfort, the responsibility of selecting that particular place in which to sit, and he sat immediately under the shattered rock. The space shattered was only four or five feet wide. If he had selected a place in which to sit two feet further out, he would have been clear of danger, and would have escaped. After his attention had been called to the condition of the roof, and having discussed the question as to whether it was safe to take this post out, and at a point of time when he had nothing at all to do with the work,—no duty to perform in connection with it,—he deliberately, of his own accord, sat down directly under the dangerous place; whereas, if he had selected a place two feet or more further out he would have been out of danger. That is an act of his own, and the company cannot be held responsible for the consequences resulting from it. Knowing all the circumstances of the case, he performed that act for his own comfort, and while sitting at the point

so selected by himself, under the circumstances indicated, the rock fell. He was evidently on the lookout, for he was the first to discover the giving away of the rock, and he called out to the others, "Boys, it is coming," or something to that effect, and sprang out. Under the state of facts indicated, which is shown by the uncontradicted testimony, but one conclusion can be reached on the law applicable to the case, which is that the plaintiff is not entitled to recover. In my judgment, the deceased lost his life in consequence of his own fault, rather than from the fault of the defendant. If the defendant was at fault at all, deceased contributed to the result in such manner, and to such extent, as to exonerate the defendant from liability. Without his reckless concurring act, this accident would not have happened. I think, therefore, that the defendant is entitled to the instruction asked.

I will say in conclusion that I find that the case was tried once before Mr. District Judge SABIN. At the close of the plaintiff's testimony on that trial there was no such motion as is now made. The case went to the jury on the testimony, and the jury found for the plaintiff. For the same reasons which I have now given, and I suppose upon similar testimony, Judge SABIN held that the verdict was not justified by the evidence, and granted a new trial on that ground. Where the evidence is such that the court would feel bound to grant a new trial in case the jury should find a verdict for the plaintiff, it is the settled doctrine of the supreme court of the United States that it is the duty of the circuit court to direct the jury, at the close of the plaintiff's testimony, to find a verdict for defendant. Being satisfied that there is no case for liability against the defendant, and that I should be compelled to set aside any verdict that the jury might find for the plaintiff in this case, I am in duty bound to follow that direction of the supreme court, and give the instruction required.

The circuit judge then directed the jury to find a verdict for defendant, which was done.

### NOTE.

1. DIRECTING VERDICT FOR DEFENDANT. See Buckley v. Gould & Curry Silver Min. Co. 14 Fed. Rep. 833; Adams v. Spangler, 17 Fed. Rep 133; Washburne v. Pintsch, Id. 582; Brockett v. New Jersey Steam-boat Co. 18 Fed. Rep. 156; Randall v. Baltimore & O. R. Co. 3 Sup. Ct. Rep. 322; Schofield v. Chicago, M. & St. P. Ry. Co. 5 Sup. Ct, Rep 1125.

2. NEGLIGENCE, WHEN QUESTION FOR JURY. Huff v. Ames, 19 N. W. Rep. 623; Eldridge v. Minneapolis & St. L. Ry. Co. 20 N. W. Rep. 151; Taylor v. City of Austin, Id. 157; Goodale v. Portage Lake Bridge Co. 21 N. W. Rep. 866; Kaples v. Orth, Id. 633; Mares v. Northern Pac. R. Co. Id. 5; Abbott v. Chicago, M. & St. P. Ry. Co. 16 N. W. Rep. 266; Dahl v. Milwaukee City Ry. Co. 22 N. W. Rep. 755; Parish v. Town of Eden, Id. 399; Baker v. City of Madison, Id. 141; Hoye v. Chicago & N. W. Ry. Co. 23 N. W. Rep. 14; Cartwright v. Chicago & G. T. Ry. Co. 18 N. W. Rep. 380; Dickinson v. Port Huron & N. W. R. Co. Id. 553; Atkinson v. Goodrich Transportation Co. Id. 764; Rogstad v. St. Paul, M. & M. Ry. Co. 17 N. W. Rep. 287; Luebke v. Chicago, M. & St. P. Ry. Co. Id. 870; McCorkle v. Chicago, R. I. & P. Ry. Co. 16 N. W. Rep. 714; Huff v. County of Poweshiek, 15 N. W. Rep. 418; Bohan v. Milwaukee, L. S. & W. Ry. Co. Id. 801; Williams v. Northern Pac. R. Co. 14 N. W. Rep. 97; Pool v. Chicago, M. & St. P. Ry. Co. Id. 46; Sorenson v. Menasha Paper & Pulp Co. Id. 446; Houser v. Chicago, R. I. & P. R. Co. Id. 778; Milne v. Walker, 13 N. W. Rep. 101; Brusberg v. Milwau-

kee, L. S. & W. Ry. Co. 12 N. W. Rep. 416; Michigan Cent. R. Co. v. Hassencyer, Id. 155; Gibbs v. Chicago, M. & St. P. R. Co. 4 N. W. Rep. 819; Michigan Cent. R. Co. v. Smithson, 7 N. W. Rep. 791; Chicago & N. E. Ry. Co. v. Miller, 9 N. W. Rep. 841; Atchison & N. R. Co. v. Bailey, Id. 50; Atchison, T. & S. F. R. Co. v. McCandliss, 6 Pac. Rep. 587; Denver, S. P. & P. R. Co. v. Conway, 5 Pac. Rep. 142; Hynes v. San Francisco & N. P. R. Co. 4 Pac. Rep. 28; Andrews v. Runyon, Id. 669; Weidekind v. Tuolumne Co. Water Co. Id. 415; Davis v. Utah Southern R. Co. 2 Pac. Rep. 521; White v. Missouri Pac. Ry. Co. 1 Pac. Rep. 611; Hart v. Town of Cedar, 24 N. W. Rep. 410; Buckley v. Gould & Curry Silver Min. Co. 14 Fed. Rep. 833; Randall v. Baltimore & O. R. Co. 3 Sup. Ct. Rep. 322: Schofield v. Chicago, M. & St. P. Ry. Co. 5 Sup. Ct. Rep. 1125; Myers v. Indianapolis & St. L. R. Co. 1 N. E. Rep. 899.