[Filed July 8, 1891.]

# JOHN WEEKLUND *v.* THE SOUTHERN OREGON COMPANY.

NEGLIGENCE — EVIDENCE — INSTRUCTIONS.— Facts examined, and *held* that there was no evidence before the jury upon which the court could properly submit the question of defendant's negligence to the jury; *and held further,* that when large timbers were being moved on rollers, and those engaged in the work failed to keep the rollers at right angles with the piece of timber being moved, and by reason thereof it slued round so that the end struck a lumber pile which caused some planks to fall upon the plaintiff's leg, by means of which he was injured, such negligence was the negligence of the plaintiff's fellow-servants, for which the defendant is not responsible.

KNOWLEDGE OF SERVANT.— Where the plaintiff assisted in the construction of the chute for moving large timbers, and had as complete knowledge of its sufficiency for the purpose for which it was constructed as the defendant, and received an injury in the moving of the timbers down said chute, defendant is not responsible on account of its alleged unsuitableness for the purpose for which it was used.

Coos county: M. L. PIPES, Judge.

Defendant appeals.   Reversed.

This is an action to recover damages for negligence. The complaint substantially charges that on the 28th of June, 1889, the defendant did saw and deliver from its said mill twelve extraordinary large timbers of about the size of 20x22 inches and 88 feet long, under the direction of C. F. Lovelace, its foreman and manager, and William Foley, superintendent, and said defendant did, through its said foreman and manager and its said superintendent, direct the plaintiff to assist in removing said timbers from the mill carriage on the wharf into the waters of Coos bay in front of said wharf, and plaintiff did so assist, and did while so doing exercise due care and diligence, but that by reason of said defendant being grossly negligent in not supplying proper apparatus to handle and remove said timbers, and by reason of the unskillfulness, carelessness and incompetency of its said foreman, manager and superintendent, it did attempt to remove the same from said track to said bay across a certain loose pile of lumber then on said wharf, under the direction of said William Foley, who was then its foreman, manager and superintendent, directly in charge of said work, and which said pile of lumber was wholly inadequate to support the

weight of said timber; that while so doing, the last handled of said timbers did, by reason of the defendant's gross negligence and the incompetency and unskillful and careless handling of said timber and the insufficiency of said support, and without any fault or negligence on the part of said plaintiff, fall on said pile of lumber on which plaintiff was working, as directed by the defendant through its said foreman, manager and superintendent William Foley, who was at said time directly in charge of said work, causing said lumber pile to fall, and a part of which did fall on and break, fracture and bruise the right leg of the plaintiff, and by reason thereof the right foot of the plaintiff was necessarily amputated between the ankle and knee, causing plaintiff great anguish, etc.

It is then in substance alleged further: That Lovelace and Foley were unacquainted with the handling and removal of such large timbers, and incompetent to superintend said work, and defendant had full knowledge of the same, and it was gross negligence on behalf of said defendant to have said Lovelace and Foley in its employ superintending said work or to undertake to remove said timbers, or any of them as aforesaid, across said pile of lumber, or at all, it being unprepared to handle timbers of that size and unskilled in the handling of the same; that the plaintiff was also unskilled in handling such timbers.

The amended answer denies every material allegation of the complaint, and then alleges the following facts: That at all times thereinafter stated, George W. Loggie was and now is general manager of the business of the defendant within the state of Oregon, and as such general manager was authorized to employ and did employ such subordinates under him as he deemed right and proper in carrying on the business of the defendant; that said Loggie did, as such general manager of the defendant, employ as a subordinate under him the said C. F. Lovelace in complaint mentioned, and did constitute him foreman in said sawmill, and did confer upon him power to take charge of the work in and

about said sawmill, and to hire and discharge men working under him in and about the same, subject to the approval of said general manager; that Lovelace did possess and exercise the authority during all the times in the complaint and answer mentioned, and none other, and that said William Foley was at all times a fellow-servant of the plaintiff, and none other, working in and about said sawmill, and under the control and subject to the orders of said Lovelace; that at the time of plaintiff's employment, he represented himself to be a skillful lumber-piler, and had worked in that capacity about a sawmill in the state of Michigan for a period of about seven years, and that he was capable of taking care of and piling the lumber and timber sawed at defendant's said mill; and that in reliance on said representations, defendant employed the plaintiff as chief lumber-piler to take charge of the lumber and timbers that were sawed at defendant's said sawmill when run out on the lumber car on the car track or its wharf, and pile and dispose of the same as directed by defendant or by C. F. Lovelace, defendant's foreman; that defendant's mode of handling lumber and timbers, and its apparatus for handling the same were well known to the plaintiff during all the time he was in the employ of the defendant as aforesaid, and was the same at the time the plaintiff's leg was injured as it was at the time plaintiff commenced work for defendant, and as it was during all the time of said service, and with which plaintiff found no fault; that during said time plaintiff frequently took charge of and assisted in the removal of large timbers which defendant's mill was adapted to cut, and at no time informed defendant that the apparatus provided for their removal was insufficient for the purpose; that before proceeding to remove the said twelve large timbers mentioned in complaint, mill-foreman Lovelace directed Wm. Foley to assist plaintiff in making such necessary temporary apparatus and appliances as should be sufficient and suitable for removing said large timbers from the lumber car on the mill track into the waters of

Coos bay; that plaintiff and said Foley, without objection from either, undertook said work and made such temporary apparatus and appliances as they deemed suitable and safe for the removal of said timbers; that the mill car track was elevated above the wharf the distance of ten feet, and the distance from said car track to the edge of the defendant's wharf where said timbers were being removed was sixty-eight feet; that at said time there was a certain pile of lumber on the wharf, placed there by plaintiff, between the car track and the edge of the wharf, which was about sixty-five feet long, six feet high and about fourteen feet wide, and that plaintiff and Foley utilized this pile of lumber in removing said timbers by constructing a chute over and upon said pile of lumber, using heavy timbers for blocking and planks four inches thick securely fastened together in such manner as to prevent their spreading apart, whereby a chute having a smooth surface was formed extending from the said car track to the edge of said pile of lumber, securely fastened to said car track and having a gradual incline to the end of said pile of lumber, to within two or three feet of the edge of the wharf; that plaintiff and Foley had full power and authority to make said temporary apparatus and appliance as safe and secure as they deemed necessary, and to obtain any article necessary therefor, and that the mill foreman believed said chute after inspection to be safe and secure for the removal of said timbers.

The remaining part of this separate answer describes the manner of the removal of the timbers and the manner in which the plaintiff was injured. The immediate manner of the injury is stated in effect that in the removal of said last piece of timber the lumber pile upon which said chute rested was being pressed out by said timber, and said Foley, who as well as the plaintiff was standing on said lumber pile, called to the plaintiff to jump or get out of the way and at the same time jumped himself, and other persons present warned plaintiff of the danger; but the plaintiff delayed getting off of said lumber pile until a portion

thereof was ready to fall and then attempted to slide over the side of said lumber pile or jumped down close to the side thereof, so that some heavy boards or plank fell and struck and broke plaintiff's leg.

Another separate answer alleges that whatever danger there was in the removal of said timbers, was patent to the plaintiff and other employes of said mill, and that defendant had no reason to believe that there was any danger to plaintiff in removing said timbers. Another defense alleges contributory negligence. Still another defense alleges want of due care in fellow-servants engaged in and about the removal of said timbers with plaintiff. The reply denies the new matter in the answer. The plaintiff recovered judgment, from which defendant appealed.

*S. H. Hazard*, for Appellant.

*J. W. Bennett*, for Respondent

STRAHAN, C. J.—An unusual number of exceptions were taken to the instructions given and refused by the court, but the view we have taken of the case renders it unnecessary to examine each exception. The real facts in this case are covered up in a vast amount of unnecessary verbiage, but when relieved of it they are few and plain.

In the spring of 1889 the plaintiff entered the service of the defendant to pile lumber at its sawmill on Coos bay, and the uncontradicted evidence shows that one employed in that capacity, according to the uniform custom of the mills there, also assisted in taking care of all the lumber that came from the mill; and it further appears that the plaintiff, after his employment and up to the time of the injury complained of, assisted in moving and caring for whatever lumber was turned out by the mill. One Shagreen and Foley were employed by the defendant, who worked with plaintiff about the yard, Foley acting in the capacity of a kind of "wharf-boss." The accident complained of occurred in moving timbers from defendant's sawmill into Coos bay. The timbers to be moved were twelve in number, 20 x 22 inches and 88 feet long. The distance from the end of the car track to the

bay was 68 feet, which was the distance the timbers had to be moved. A pile of lumber 64 or 65 feet long, from 15 to 20 feet wide and about 8 feet high, extended from the mill nearly to the edge of the wharf. On the top of this lumber pile a chute was constructed by Foley and the plaintiff, but under Foley's directions. In the first place, a number of pieces of timber 5 inches thick, from 12 to 33 inches wide, were laid across the lumber pile, and on top of these were laid two planks, each 4x12 inches wide, extending to the edge of the wharf on a gradual incline. On the top of the chute thus formed were placed three rollers 10 inches in diameter and 2½ feet long. The planks were securely spiked to their supports and dogged together so that the same could not and did not separate. The timbers were pinched from the carriage until they rested upon the rollers. The rollers were kept straight by men with mauls attending them as the timber was slowly and gradually moved upon them. The incline was so slight and gradual that they had no difficulty in regulating the movement of the timber on the rollers until the middle of the stick passed the edge of the wharf, where it plunged into the waters of the bay. All of the timbers were launched without accident to any one until it came to the last. After this stick was upon the rollers, they were not kept at right angles with it, and the front end slued around, striking the lumber pile upon which the plaintiff and others engaged in the work were standing. This caused a number of the boards from the top of said pile to fall upon the plaintiff's leg, by means of which it was broken. Neither the chute nor any of the cribbing supporting it separated or failed in any way, and the sole cause of the injury was the sluing of the rollers. We think all the evidence on both sides, so far as it relates to, accounts for, or explains the manner of the injury, concurs in this.

At the conclusion of the plaintiff's evidence, the defendant moved for a non-suit for the reason that the plaintiff had not proven a case sufficient to be submitted to the jury. This was overruled and an exception taken; but we do not

propose to pass upon this exception, as the case will be disposed of on other grounds.

The court charged the jury upon the theory that there was some evidence before them of negligence on the part of the defendant upon which they might find a verdict for the plaintiff. In this we think the learned circuit judge erred. The most that can be said for the plaintiff's evidence is, that some of it tended to prove, or at least some of the witnesses gave it as their opinion, that the better way to have launched those timbers was to lower them from the carriage, by means of an apron, down upon the wharf, and then move them into the water; but this is not enough to prove that the defendant was negligent in adopting the means which it did. It does not tend to prove that the plan adopted by the defendant was not reasonably safe or secure. In addition to this, all the evidence tends to prove that if the piece of timber had been kept upon the chute there was no possible danger. It was the inattention of the men at the rollers with the mauls that caused the rollers to slue round, which made the end of the stick strike a portion of the lumber and caused the same to fall, and this was what injured the plaintiff. These men, and all engaged in the moving of these timbers, were the fellow-servants of the plaintiff, and if they were negligent the master was not liable for it. The negligence of fellow-servants is one of the risks which the plaintiff assumed when he entered the defendant's service.

But in addition to this, the plaintiff assisted in the construction of the chute. He knew all about its structure and purpose. The defendant had no knowledge on that subject that was not equally possessed by the plaintiff, and after the chute was completed, the plaintiff pronounced it safe and suitable for the purpose for which it was made. If an injury happened to the servant under these circumstances, the master is not responsible. (*Kielley* v. *Belcher S. M. Co.* 3 Sawy. 500; *Bunt* v. *Sierra Buttes G. M. Co.* 11 Sawy. 178; *Loonam* v. *Brockway,* 28 How. Pr. 472; *McGuynn* v. *Brodie,* 31 Cal. 376; *Railroad Co.* v. *Jewell,* 46 Ill. 99, 92 Am. Dec. 240.)

For the reasons that many of the instructions given by the court were not justified by the evidence, and are at variance with what is here said, the judgment appealed from must be reversed and remanded for such further proceedings as may be proper, not inconsistent with this opinion.

In disposing of this case we have not found it practicable to examine each exception. The defendant asked fifty-four instructions, many of which were given in a modified form, others were refused, and some of them were given as asked. The court gave fifty instructions, to many of which exceptions were taken. To examine separately each of these rulings would require more time and labor than we can bestow upon a single case. Nothing short of a moderate-sized treatise on the law of negligence and its cognate subjects would suffice. Such voluminous instructions must tend to confuse the jury rather than elucidate the questions they are to consider. A few plain and simple propositions of law applicable to the facts will aid them in reaching a correct conclusion much more effectually than some of the complicated statements to be found in this record.

Let the judgment be reversed and the cause remanded to the court below for such further proceedings as may be proper, not inconsistent with this opinion.

BEAN, J., having presided at two former trials of this case, did not sit here.