## GUNN v. WILLINGHAM.

1. One who is engaged with others in raising, by means of a derrick, timbers which are being used in the construction of a house, and whose particular duties are to stand on a scaffold and receive and detach such timbers from the derrick when they are sufficiently elevated for the use intended, is a fellow-servant of one who stands on the ground and operates the machinery which elevates such timbers, when the persons so engaged are under one common employment, receiving orders from another as superintendent of the entire construction; and this is so even if the person operating the derrick is invested with authority to direct how and when the elevation of timbers shall be made.

2. Even if in a given case it be shown that the machinery and appliances furnished by the master for the prosecution of the work in hand were defective, he is not liable to a servant for an injury occasioned by defects of which the latter had knowledge before he was injured, if with such knowledge, and without calling attention to the defects, he continued in the work carried on by the use of such machinery. Nor is he entitled to recover on the ground that the master negligently employed an incompetent fellow-servant, unless it be made to appear not only that such fellow-servant was in fact incompetent, but that this was known or ought, in the exercise of due diligence, to have been known to the master at the time of the employment; or else that the master negligently retained such fellow-servant in his service under circumstances warranting a finding that he knew or was fairly chargeable with knowledge of such incompetency.

Argued June 8, — Decided July 14, 1900.

Action for damages. Before Judge Reid. City court of Atlanta. September term, 1899.

*Hoke Smith & H. C. Peeples*, for plaintiff. *Westmoreland Brothers* and *Culberson & Willingham*, for defendant.

LITTLE, J. Gunn instituted an action against Willingham by which he sought to recover damages, which it is alleged he sustained by reason of the negligence of the defendant while the relation of master and servant existed between them. The petition and answer raised the issue, whether the master had provided reasonably safe appliances in the work being performed by the plaintiff and those engaged with him in a common business, and also whether the master was negligent in the employment of an incompetent servant who was handling the machinery at the time the plaintiff was injured. It is alleged that the master was negligent in each of these particulars, and that the plaintiff was free from negligence and was engaged in separate

work from that connected with the handling of the machinery which was the proximate cause of his injury. It appears from the evidence of the plaintiff, who was a witness in his own behalf, that he was an experienced carpenter in the employ of the defendant in July, 1897, when he was injured. The defendant was a contractor engaged in the construction of a large building to be used for manufacturing purposes. In the construction of the building a derrick, nearly seventy-five feet in length, was being used. It was constructed by lapping pieces of timber together and having them heavily spiked and bolted. It also appears that the plaintiff and one other employee of the defendant constructed the derrick, which was used for hoisting heavy timbers to the top of the work as it progressed. Originally this derrick was operated by one Carey who, the plaintiff testified, had experience in that business, and the witness, who had knowledge of such matters, was satisfied with the manner of the construction of the derrick and the way in which Carey handled it. The base of the derrick was originally placed on the ground floor of an old building which stood on the same site and which had been previously used for the manufacture of commercial fertilizers. On the day previous to the time when plaintiff was injured, the derrick was put in charge of one Brantley, and Carey had charge of the landing of the timbers. The plaintiff, Brantley, Carey, and others were building the house together. When Brantley took charge of the derrick, he cut off a part of it and took it out of the cellar or pit and placed it on a bank, supporting it, as it was supported before, by three guy-ropes which were attached to stakes driven in the ground 15 or 20 feet from the mast of the derrick. At the time he was injured, the derrick was being used to carry heavy timbers to the top of the building. Plaintiff was on a scaffold, helping to receive the timbers brought up by the derrick, and was fifty feet above the ground. While the heavy timbers were being brought up, one of the ropes broke and the derrick was overthrown, striking the scaffold and precipitating plaintiff to the ground. The guy-ropes were being used in the same way that they had been theretofore used, and were fastened in the form of a triangle, with the mast of the derrick as the apex. The guy-ropes were new at the beginning of the work, but they were

small, about an inch or 3/4 of an inch in diameter. Witness had seen larger guy-ropes used to elevate timbers of that character, but these had sustained similar loads up to that time without being broken. Plaintiff knew that these ropes were being used, that the ropes were too small, but did not consider it his business to suggest that fact; he thought the ropes were liable to break, using them so long, and he considered it dangerous work any way. At the time the ropes gave way and caused the derrick to fall, Brantley himself was managing the derrick. There was acid in the cellar, and before the derrick was removed the guy-ropes often did get in the acid, because it was banked up in the cellar.

At the time plaintiff was hurt the building was almost completed, and the derrick was taken out of the cellar in order to carry the timbers which were necessary to complete it to the top of the building. Plaintiff had known Brantley ever since he was a boy. They had worked together before the superintendent hired the plaintiff and Brantley to engage in this work. Brantley's business was that of a carpenter and woodworkman. Plaintiff did not know of any experience he had in the management of derricks. Previously to the time when Brantley took charge of the derrick he was engaged at work on another building, and when that was finished he came to this one. There was testimony tending to show that the derrick was not properly managed by Brantley, and one witness testified that, while he had known Brantley to handle smaller derricks, he had never before known him to handle a derrick of that size, and that a failure by Brantley to follow the instructions of Carey caused the derrick to fall. Evidence was also introduced tending to show that one of the guy-ropes of the derrick was fastened to a tree, another under the railroad iron, and the other to a stake driven in the ground; that the derrick was in a leaning position against the line which was fastened to the stake, which caused the stake to be pulled out of the ground. When the stake was pulled out of the ground the weight was thrown on the rope which broke. The stake was driven in the ground two feet, sufficiently, in the opinion of the witness, to have held the rope. At the time of the fall Brantley was directing the operations. Another witness, who stated that he

had experience in such matters, testified, among other things, that he saw the derrick after it was fixed; that there was nothing about it sufficient to call attention that anything was wrong. Jim Brantley was doing the work with a squad of men. Jim Brantley was under William Brantley, and William was under Padgett, and Padgett worked for the defendant. Padgett, the superintendent, was there frequently, as was also the defendant. On the conclusion of the evidence for the plaintiff, the defendant moved for a nonsuit, which was granted, and the plaintiff excepted.

1. It is insisted here that the nonsuit was improperly granted, and that the evidence showed that the ropes used to support the derrick were too small, that the superintendent in charge of the derrick managed improperly, that he was incompetent, that the master knew all this or ought to have known it, and that the plaintiff received his injuries because of the defective ropes and the improper handling of the derrick by the incompetent foreman, while the plaintiff was in the discharge of his duty, using due care. Our Civil Code, § 2610, declares that, except in case of railroad companies, the master is not liable to one servant for injuries arising from the negligence or misconduct of other servants about the same business. There certainly can not be any serious contention but that Brantley who was operating the derrick, and the plaintiff who was receiving the timbers which the derrick carried to the top of the building, were engaged about the same business. They and the others with them were engaged in the construction of a house. In order that the necessary timbers might be taken to the top of the building, it was important that a derrick should be used. In using it, it was necessary that some one should so direct its movements that the necessary timbers should be fastened to this lifting power, and also necessary that when such timbers had reached the proper height they should be received and detached. It was the business of Brantley to do the one, and of the plaintiff the other.

This court ruled in the case of *McGovern* v. *Columbus Manufacturing Co.*, 80 *Ga.* 227, that a workman engaged with two others, and having the direction of the work in the pickerroom of a factory as foreman, was not the general superintend-

ent of the corporation operating the factory, so as to render it liable for his negligence in starting a machine whereby another employee was injured. In the case of *Ellington* v. *Beaver Dam Co.*, 93 *Ga.* 53, where a number of previous cases ruling on the question as to who are fellow-servants are referred to, quoting from Mr. Wood in his Treatise on the Law of Master and Servant, the court said: "It is subjection to the same general control, coupled with an engagement in the common pursuit, that affords the test." Without further reference to this or the great number of other adjudicated cases which elaborate the law declaring who are fellow-servants, it is sufficient to say that, under this test, Brantley, the foreman of the squad, and the plaintiff were fellow-servants; they were engaged in one common employment, which was placing timbers on a house in process of erection. One gave the orders, the timbers were attached to the machine, the foreman then raised them by the application of machinery, the plaintiff received them. It was a common pursuit; both were subject to another Brantley, that Brantley to Padgett, and all to the defendant Willingham. They were, in our opinion, fellow-servants.

2. While the master is not liable for injuries arising from the negligence or misconduct of other servants about the same business, he is liable for the failure to exercise ordinary care in the selection of his servants, and their retention after he has knowledge of their incompetency. He must also exercise the same degree of care in furnishing machinery, equal in kind to that in general use, and which is reasonably safe for all persons who operate it with ordinary care and diligence. Civil Code, § 2611. These are but the rules of the common law; and the principle upon which they are founded is, that one man is not to be held liable for the negligence or misconduct of another, unless that one owes to the person injured by such misconduct or negligence a duty; and in an issue arising between master and servant that duty must be shown. The burden of proving negligence upon the part of the master is on the servant, and he is bound to show that the injury arose from defects known to the master, or which he could have known by the exercise of ordinary care, or that the master has failed to observe precautions essential to the protection of the

servant which ordinary prudence would have suggested. And no presumption of negligence on a master's part is raised from the mere fact that an injury results to a servant from a latent defect in machinery or other appliances used in a particular business. There must be evidence of negligence connecting him with the injury. Wood's M. & S. § 368.

So that, if the plaintiff was entitled to recover in this case, the burden was upon him to show this negligence. It is insisted first, that the evidence was sufficient to carry this case to the jury, that the master was negligent in not furnishing proper ropes by which the derrick was to be upheld. We do not think so. The only evidence relating to that subject is as to the size of the rope, and that it had been stretched in a cellar where there was an accumulation of acid. It was not shown that the rope had been affected by the acid. At best it leaves only an inference that it might have been. Nor was it shown of what size a rope should have been to have been safely used in carrying necessary timbers to the building which was being erected. It is true that the plaintiff says that the rope used was too small; and yet, according to his own evidence, he does not know anything more than that one of the ropes broke. The manner of the breaking is explained by another witness for the plaintiff, who, in giving an account of the accident, says that a stake to which one of the ropes was attached, in consequence of the strain upon it, was drawn from the ground. If this be true, the rope bore the strain sufficiently to draw up the stake without breaking, and the fault would seem to have been that the stake had not been sufficiently fastened. The same witness, testifying as to the breaking of the rope, says that after the stake was drawn from the ground the derrick pressed against another rope and by its weight caused it to break. So, therefore, it does not appear at all that the rope was broken because of the strain of operating the derrick. But suppose we assume that the rope was too small for this use, and even go further and assume that the rope was injured by its contact with acid, which does not appear, a sufficient reply to the plaintiff's contention is that he knew of both facts preceding the occasion of his injuries and with this knowledge continued the work. It is declared by our Civil Code, § 2612, that " A servant as-

sumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself. In suits for injuries arising from the negligence of the master in failing to comply with" his duties, "it must appear that the master knew or ought to have known of the . . defects or danger in the machinery supplied; and it must also appear *that the servant injured did not know and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof."* The liability of a defendant in a case like this arises from the fact that he was the cause of the injury by employing the servant in a particular work, when he knew or ought to have known that the machinery by which he carried on the work could not be safely used for that purpose, and that its use was accompanied by extra risk and danger. 28 How. Pr. 472. But the rule is universal that he is not liable for injuries occasioned by such machinery, if the servant has the same knowledge of its defects, or the danger incident to its use, as the master, in the exercise of due care, possesses, and at or before the time the accident occurred there was nothing to indicate any danger, such as demanded or suggested precautions which were omitted; nor, if the instrumentalities of the business are suitable, and proper precautions are adopted, is the master liable for an injury that results from an improper or imprudent use of the same by a coservant. Wood's M. &. S. § 371; 117 Mass. 312; *Pitts* v. *Fla. Central & P. R. R. Co.*, *98 Ga.* 665. See also *Ingram* v. *Hilton,* 108 *Ga.* 194–197.

It is, however, contended that there was evidence showing that Brantley, who was operating the derrick, was incompetent, and that the master was chargeable with a knowledge of such incompetency at the time he was employed, or during the progress of the work before the injury. It was shown, even by the plaintiff himself, that as to general carpenter work Brantley was a good workman. It was shown also, by another witness for the plaintiff, that Brantley had experience in the operation of derricks. It is true that the last witness testified that Brantley's experience had been confined to derricks of smaller size, but, nevertheless, the fact remains that he had experience in the business of using a derrick to elevate material. This evidence was not sufficient to establish even that Brantley was in-

competent.    He might have been careless in the particular instance where the plaintiff was injured.    He may not have observed proper precautions, and had this been the issue, under the evidence the case ought to have gone to the jury.    But that fact would not be sufficient to charge the master with liability. The burden in all such cases is upon the servant seeking a recovery to establish the fact that the injury resulted to him because the master did not exercise reasonable and proper care in the employment of the servant, and this must be established as a fact in the case, and can not result as an inference from the circumstance that the servant causing the injury was even in fact incompetent.    59 N. Y. 356; 49 Mo. 167; 20 Mich. 105. The question, therefore, relates to the want of care on the part of the master in employing the servant, even when it is shown that the injury occurred by reason of the negligence or inefficiency of such servant; and, taking all of the evidence of the plaintiff, we do not find that it contains anything which would have authorized the jury to determine that the defendant was negligent and failed to use proper care in the employment of Brantley.    Indeed, the plaintiff himself testified that he had known Brantley a great many years, and knew that he was a good workman; and while his testimony is to the effect that Brantley improperly managed the derrick, he did not testify to any fact from which it could be inferred that the defendant was negligent in employing him.    The plaintiff was undoubtedly severely injured, but pecuniary compensation does not follow every personal injury.    The work in which he was engaged was a dangerous one.    He recognized that it was, and so testified.    He was fully acquainted with the machinery that was being operated, and the appliances used to operate it.    He knew his fellow-servant Brantley — knew his general capabilities.    If he was in fact incompetent to manage the derrick, it was not shown that it was generally known; and the fact that he managed it improperly in a particular instance is not sufficient, of itself, to support the charge against the master, of negligence in the employment of Brantley.    The rule of liability in such a case is well fixed.    The evidence did not make a case which would support a verdict in favor of the plaintiff from any point of view, and there was, therefore, no error in granting the nonsuit.

*Judgment affirmed.    All the Justices concurring.*